[No. 925-1.    Division One—Panel 1.    January 31, 1972.]

THE STATE OF WASHINGTON, *Respondent*, v. RALPH RAY ROCKETT, *Appellant.*

*James A. Alfieri,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *James E. Warme, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant was convicted of four counts of grand larceny by possession of stolen Volkswagen bucket seats and other personal property taken from each of four Volkswagen cars. He appeals.

The jury could have found the facts to be these. On April 16, 17, 19 and 22, 1970, in King County, Washington, four sets of bucket seats were stolen from four Volkswagen cars, model years 1968 to 1970, each respectively owned by others, namely, Messrs. Gremmels, Handel and Wilson, and by Elaine Roxi Ewing.

About April 20, 1970, defendant telephoned a Mr. John D. Fisher, parts manager for Freeway Volkswagen in Seattle, Washington. He stated in substance that he was building dune buggies in California and was coming up from California to start a dune buggy manufacturing plant and could supply Freeway with Volkswagen seats. Mr. Fisher bought three sets of such seats from the defendant. About the same time, the defendant also dealt with a Mr. Mike McDonald, parts manager for Metro Volkswagen. He sold Metro six sets of Volkswagen seats.

On April 24, 1970, defendant Rockett was arrested for grand larceny of Volkswagen bucket seats and rear bench seats. That evening codefendant Larson, not involved on this appeal, assisted by one William G. Bassett, used a U-Haul van to remove approximately 22 bucket seats from the defendant Rockett's house. Upon removal, the van was then taken to a house in which Bassett was living with his fiancee. There the seats were unloaded and placed in the basement of the house. Because of the fiancee's objection to the seats remaining in the house, a day and a half later codefendant Larson, with Bassett's help, loaded them in a van, covered or caused the bucket seats to be covered with a bedspread, and drove the van with the seats to a multiple garage. There the seats were unloaded and covered with the same bedspread. At the end of May 1970, by use of a search warrant, 21 Volkswagen seats were found in that garage still covered with the bedspread. The seats and the bedspread were removed to the property room of the Seattle Police Department. There the victims David C. Wilson, David Handel and Elaine Roxi Ewing respectively identified the bucket seats that had been stolen from their Volkswagen cars. Meanwhile, Mr. Gremmels' stolen bucket seats had been reacquired and installed about April 23, 1970 by Metro Volkswagen in his Volkswagen car at a cost of approximately $300.

Defendant, after arrest and following receipt of warning of his constitutional rights, gave two explanations of how he came into possession of the bucket seats he sold to Freeway Volkswagen. His first explanation was that the Volkswagen seats had been shipped up by a Mr. Kinser of Compton, California. Then, in an effort to explain why he had no bills of lading, he stated that the seats were some he had brought up with him when he originally came from California. When questioned on April 27, 1970 in the city jail concerning the 1967 and 1969 bucket seats sold to Volkswagen agencies around the Seattle area, he stated that he had the Volkswagen seats shipped up from California; that they had come through German Imports, an Oregon estab-

lishment; and that from there they had been shipped to Fitz Auto Wrecking in Seattle.

Defendant contends that the court erred in refusing to grant defendant's challenge to the sufficiency of the evidence at the end of the state's case. Defendant rested at the end of the state's case. In that connection he contends, first, that the state failed to prove that the defendant Rockett had any knowledge that the Volkswagen seats in question were stolen at the time he was alleged to have them in his possession. He further contends that the state failed to prove that the value of the seats involved exceeded $75 as required by RCW 9.54.090.

On the question of whether the defendant had knowledge that the bucket seats involved in the instant case were stolen, actual knowledge is unnecessary. It is sufficient if he had knowledge of facts sufficient to put him on notice that they were stolen. *State v. Rye,* 2 Wn. App. 920, 471 P.2d 96 (1970). *See* 50 Am. Jur. 2d *Larceny* § 163 (1970, Supp. 1971). In the instant case there was sufficient evidence from which the jury could find that he knew that the bucket seats were stolen or had knowledge of facts sufficient to put him on notice that they were stolen. The possession of recently stolen property is evidence of larceny when the possession of such property is coupled with other indicatory evidence. *State v. Haverty,* 3 Wn. App. 495, 475 P.2d 887 (1970). If the possession is not satisfactorily explained, "the jury may be justified in returning a verdict of guilty." 50 Am. Jur. 2d *Larceny* § 163 (1970, Supp. 1971). A short period between the theft and the possession strengthens the inference that the possession is unlawful. *See State v. Dancyger,* 29 N.J. 76, 148 A.2d 155, *cert. denied,* 360 U.S. 903, 3 L. Ed. 2d 1255, 79 S. Ct. 1286 (1959); 50 Am. Jur. 2d *Larceny* § 162 (1970, Supp. 1971).

In the instant case the bucket seats were stolen April 16, 17, 19 and 22, 1970. Defendant made a sale of bucket seats to Freeway Volkswagen about April 20, 1970, and Freeway Volkswagen resold the seats to Metro Volkswagen so that the latter could install them in Mr. Grem-

mels' Volkswagen from which they had been stolen. Included in the 22 seats taken from defendant Rockett's house on the evening of April 24, 1970 were three sets of stolen seats, one belonging to David C. Wilson, one belonging to David Handel, and one belonging to Elaine Roxi Ewing. Defendant's explanations made to the police officers, both at the time of the arrest and 3 days thereafter, were not the same. None of the explanations accounted for the presence of the three sets of bucket seats stolen from the Wilson, Handel and Ewing Volkswagen cars. Furthermore, the officer assigned to investigate the existence of defendant's claimed dune buggy business in Pasadena, California, was unable to locate any such business. As stated in *State v. Green,* 2 Wn. App. 57, 68, 466 P.2d 193 (1970):

> The rule as stated in *State v. Douglas* [71 Wn.2d 303, 428 P.2d 535 (1967)], and *State v. Portee* [25 Wn.2d 246, 170 P.2d 326 (1946)], is that possession of recently stolen property in connection with "slight corroborative evidence of other inculpatory circumstances tending to show guilt," is sufficient to convict. The other corroborative evidence can consist of a failure to explain, a false or improbable explanation, or an explanation that cannot be checked or rebutted.

In our opinion, there was sufficient evidence from which the jury could find that the defendant knew that the bucket seats in the instant case were stolen, or that the defendant had knowledge of facts sufficient to put him on notice that the bucket seats were stolen.

The second ground advanced in support of the claim that the evidence was insufficient is that the evidence is insufficient to show that the bucket seats in each of the counts had a value in excess of $75. We do not agree. In addition to the testimony of each of the four victims from whom the bucket seats were stolen, photographs of the bucket seats in each of the cars were received in evidence. The photographs show that except for color the general style of the bucket seats is similar in each of the model years of the Volkswagens involved. The replacement cost of William Gremmels' seats was about $300, his seats being those ac-

tually stolen, repurchased and reinstalled. Furthermore, the parts manager of Metro Volkswagen testified that late model Volkswagen seats sold for about $325. Elaine Roxi Ewing paid $150 for older seats which were not as good as the seats stolen from her car. David Handel's bucket seats for his 1968 Volkswagen were similar to Gremmels' seats replaced at a cost of $300. David Wilson paid $57.50 for old seats taken from a wreck which were not the original high-back seats and were not in good condition. His Volkswagen was a 1968 model and it is a reasonable inference that the replacement cost of his seats would have been substantially the same as the replacement cost of Handel's seats. Furthermore, the evidence showed a billing from Rockettes Dune Buggies, operated by defendant, to Freeway Volkswagen under date of April 19 and April 20, 1970. The billing showed a price of $190 charged for each set of seats. This price was confirmed in a formal billing of "Rockettes Dune Buggies" at its Seattle address on May 1, 1970. In our opinion, there was substantial evidence from which the jury could find that the seats stolen had a value in excess of $75. *See State v. Toliver*, 5 Wn. App. 321, 487 P.2d 264 (1971); *State v. Melrose*, 2 Wn. App. 824, 470 P.2d 552 (1970); *Maisel v. People*, 166 Colo. 161, 442 P.2d 399 (1968).

■ Defendant next contends that the court erred in refusing to grant defendant a mistrial. The error assigned is based upon the following occurrence when Detective Patrick Dempsey was questioned by the state on direct examination:

Q  Did you have any other conversations about the delivery of the seats or did he say anything else about it?
Mr. Alfieri: I'm going to object to the form of the question.
The Court: The form of the question, yes. It is a multiple question.
Q  What happened next, Detective?
A  He immediately advised us that he did not wish to say anything further on this matter.
Mr. Alfieri: I'm going to object to that and move it

be stricken, Your Honor. It is not proper to say the defendant refused to make any further statements. Clearly that is improper. In fact, I'll move for a mistrial at this point.

The court granted defendant Rockett's motion to strike the admission, but refused to grant a mistrial. Defendant contends that the defendant had a right to refuse to speak and that it was improper to permit his silence to be used against him. No doubt had the testimony been used for the purpose of establishing defendant's guilt—the issue of the statement's voluntariness not having been raised at trial—it would have been improper to introduce testimony that he did not wish to say anything further. *State v. Tembruell,* 50 Wn.2d 456, 312 P.2d 809 (1957); *State v. Redwine,* 23 Wn.2d 467, 161 P.2d 205 (1945). In the instant case, however, we find no prejudicial error. In the first place, the court struck the admission and we must assume that the jury disregarded the answer in accordance with the court's instructions. *See State v. Priest,* 132 Wash. 580, 232 P. 353 (1925). Furthermore, if the defendant was dissatisfied with the adequacy of the instruction to the jury to disregard the answer, he might have requested a more adequate protective instruction by which the jury would be informed that the answer was not to be considered as an admission of any kind. The error here, if any, could have been cured by a protective instruction and presumptively was cured by the instruction to strike the answer. *See State v. Green,* 70 Wn.2d 955, 425 P.2d 913 (1967); *State v. Flanagan,* 223 Tenn. 134, 443 S.W.2d 25 (1969). Furthermore, it may well be doubted whether an answer, which appears to have been given in good faith to an unobjected-to question which could reasonably call for the kind of an answer given, may be said to be improper. The answer was not only not used as an admission of guilt, but it was stricken, presumptively removing any prejudice therefrom.

■■ Defendant finally contends that the trial court erred in giving instruction No. 14 and failing to give de-

fendant's proposed instruction. Instruction No. 14 given reads:

> Mere proof of possession of stolen property cannot of itself establish a prima facie case of larceny.
>
> Possession is only a circumstance which may be considered with all other facts in determining guilt or innocence.

The requested instruction added:

> The State must show that the accused must have known that the property had been appropriated in such a manner as to constitute larcency and that the property must have been received by the accused with the felonious intent to deprive or defraud the owner thereof.

In the first place, we cannot consider the error assigned because the proposed instruction in question is not contained in the statement of facts as required by CAROA 34(8). *See State v. Moxley*, 6 Wn. App. 153, 491 P.2d 1326 (1971); *Porter v. Chicago, M., St. P. & Pac. R.R.*, 41 Wn.2d 836, 252 P.2d 306 (1953). Furthermore, the substance of the last paragraph of the proposed instruction is contained in the "to convict" instructions No. 3, 4, 5 and 6, as well as in instruction No. 7, and no error has been assigned to the giving of these instructions. The jury having been adequately instructed on the point, it is not error to refuse a requested instruction in language proposed by the defendant on the same point, even though in words somewhat different from the instructions given. *State v. Caril*, 4 Wn. App. 683, 483 P.2d 870 (1971).

The judgment is affirmed.

WILLIAMS, J., concurs.