# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50582-7-II |
| Respondent, | |
| v. | |
| JOHN MICHAEL HODGES, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury found John Hodges guilty of second degree identity theft and second degree possession of stolen property.  Hodges appeals his convictions, arguing that (1) he received ineffective assistance of counsel when counsel (a) failed to investigate and present witnesses and evidence, (b) failed to propose a missing witness instruction, (c) failed to impeach a State witness and object to evidence, (d) invited the jury to convict during closing arguments, (e) failed to argue same criminal conduct at sentencing, and (f) failed to cite relevant case law in his motion for an exceptional sentence downward; (2) the trial court erred by denying his motion for new trial; and (3) the State failed to present sufficient evidence supporting his convictions.

We hold that the State presented sufficient evidence to support his convictions.  We also hold that Hodges's counsel was not ineffective, and because Hodges fails to demonstrate that he received ineffective assistance of counsel, he also fails to show that the trial court abused its discretion by denying his motion for new trial on the same grounds.  Consequently, we affirm Hodges's convictions.

FACTS

A.    *Background Facts*

On December 5, 2015 Hodges went to Tower Lanes to play miniature golf with his daughter and grandson. He used a credit card with the name Dean Solomon to pay the $20.00 fee for the golf game. When signing the receipt, Hodges "scribbled in a name." 3 Verbatim Report of Proceedings (VRP) (Feb. 15, 2017) at 275.

Also on December 5 Solomon discovered unauthorized transactions made on her credit card. She discovered that the card had been used the day before multiple times, and had just been used minutes before at Tower Lanes. She immediately called Tower Lanes and then called the police department. Trenton Christensen, an employee at Tower Lanes, helped locate the transaction and identified Hodges as the person who had used Solomon's card.

When Tacoma Police Officer Jesse Jahner responded to Tower Lanes, Christensen, directed Officer Jahner to Hodges. Officer Jahner told Hodges that he was there because of a stolen credit card. Hodges responded by telling Officer Jahner that he was going to call Walter Clark who had given him the card because Clark owed him $50 or $60. Hodges gave Solomon's card to Officer Jahner.

Christensen also gave Officer Jahner the receipt from Hodges's transaction. Officer Jahner observed that "it appeared [Hodges] had tried to sign a large cursive D, and it looked like the signature 'Dean' on it." 2 VRP (Feb. 14, 2017) at 228.

The State charged Hodges with second degree identity theft and second degree possession of stolen property. Hodges proceeded to a jury trial.

B.      *Trial*

Throughout the trial court proceedings, Hodges was represented by three different attorneys.  First, he was represented by Michael Maltby.  Then, for reasons unclear from the record on appeal, Charles Johnston represented Hodges throughout trial.  Finally, after the jury's verdict, but before Hodges was sentenced, a third attorney represented Hodges during his motion for a new trial and sentencing.

Trial was continued multiple times.  The State named Clark as a witness and subpoenaed him for two trial dates, which were continued.  Clark was not subpoenaed for the final trial date.  The State told the court that "Clark is not available to testify," and defense counsel agreed, noting that "Clark is long gone."  3 VRP (Feb. 15, 2017) at 265.  Hodges named "Ashley Hodges" as a witness and also told the trial court that he and his trial counsel had discussed whether to have his daughter testify.[1]  CP at 221.

At trial, Solomon and Officer Jahner testified consistently with the above facts.  Christensen testified that he did not confront Hodges before the police arrived, and that he did not see his supervisor confront Hodges before police arrived.  The receipt was admitted into evidence.

Solomon also testified that Clark moved out of her house approximately one week after Hodges used her card.  She testified that a few weeks after Hodges used the card, she received a letter in her mailbox.  The letter was not in an envelope, but was with the rest of her mail.  The letter was written to Clark from Hodges.  The court admitted the letter.  Hodges did not object to the admission of the letter, and stipulated to the chain of custody.  On cross-examination,

---

[1] It appears that Ashley Hodges is John Hodges's daughter, but the record is not explicit on this point.

Hodges's counsel questioned Solomon about her discovery of the letter. Solomon reiterated that she discovered the letter without an envelope.

The letter stated:

> To Wally,
> Hey, what[']s happening? Remember me? "ED" (Dean Solomon) and I had picked you up from Motel 6 that Friday night, December 4, then we went to Les (Doc's) house on East 64th and Portland Ave. til morning. Then I started walking to the 72nd St. transit center, where you and ED (Dean Solomon) had picked me up. ED (Dean Solomon) gave us (you [and] me) a ride home to my motor home downtown at the car lot where my Explorer was. Do you remember when "ED" (Dean Solomon) gave me his [D]irect [E]xpress card and told me to go ahead and use it and to sign the name Dean Solomon on any receipt and to get the card back to him later that day? Well he tried to contact me a few hours later and couldn't reach me, so he got scared he wasn't gonna get the card back and decided to call it in stolen and never even attempted to call or text me to inform me he had called it in stolen. So when I used it to pay for putt-putt golf at [T]ower [L]anes that Saturday evening with my 5 year old grand-son, the card was stolen and I got arrested in front of my grandson! . . . However, you can help by simply writing a statement to my attorney . . . stating you witnessed "ED" (Dean Solomon) give me his card when he dropped me off. You following me on this buddy?
>
> Of course you are. I please need you to have my back on this. Wally, this means the world to me and my grandson[']s little heart is broken wondering where his papa is at. So if you could contact my attorney
>
> . . .
>
> and state:
>
> I Wally Clark, did witness Dean Solomon give a [D]irect [E]xpress card to John Hodges, and did hear Dean Solomon authorize John Hodges to use it and sign the name Dean Solomon. Wally Clark
>
> . . . .
>
> That's it man. Nothing else needs to be said! This can be done privately in my attorneys [sic] office between you and my attorney. Nothing will happen except the charges against me will be dismissed in court . . . . No you won't have to come to my court hearings or trial. Just need a signed statement from you please please please. I will give my attorney your phone [number] on Monday. Thanks man, hope to see ya soon.

4

Your friend John Hodges.

Ex. 2.

Hodges testified that on December 4, 2015, he went to a party with his friend "Ed" and Walter Clark, who he met for the first time that night. 3 VRP (Feb. 15, 2017) at 261. Hodges brought bottles of alcohol to the party. Hodges gave the bottles to Clark in exchange for money. As payment, Clark gave Hodges a credit card with the name Dean Solomon on it. Solomon was Clark's roommate.

Hodges testified that when Clark gave him the credit card at the party, he did not look at the name on the card. Hodges assumed that the card belonged to Clark.

Hodges testified that he went to Tower Lanes to play miniature golf, and paid with the card. While playing golf, the supervisor at Tower Lanes approached him, and he understood that the card was not authorized. His daughter paid the supervisor for the golf, and they continued to play. At that point, Hodges called Clark, who hung up on him. He tried to call Clark while talking to Officer Jahner, but Clark would not respond.

Hodges testified that he did not know that he was not authorized to use the card, that the card did not belong to Clark, or that the card was stolen. Hodges denied signing the receipt "Dean," and testified that he "scribbled" a name. 3 VRP (Feb. 15, 2017) at 275. He explained that he regularly used his boss's credit card for work, and would sign a version of his boss's name on the receipt. Hodges testified that "I just scribbled in a name like I do when—I used Dan Kuchan's card all the time to go to Home Depot or Lowe's." 3 VRP (Feb. 15, 2017) at 275.

Hodges testified that he wrote the letter to Clark admitted as exhibit 2, but that he mailed it in an envelope. He explained that, under the belief that Clark was responsible for the stolen

card, the letter was part of his plan to clear his name without scaring Clark away. Hodges

believed that Clark stole Solomon's card from Hodges's friend, Ed, because "the first two letters

of the name Dean backwards is Ed, so I thought, wow, my friend Ed is Dean Solomon, so I

thought [Clark] may have taken the card from my friend Ed." 3 VRP (Feb. 15, 2017) at 282.

Hodges was concerned that if he accused Clark, Clark would run. So Hodges "figured that if

[he] made [Clark] believe that he wasn't going to get in trouble, that [Clark] might write the

statement that would get me out of jail for something I didn't do and then we and my friend Ed

could go after him and find out what the deal was." 3 VRP (Feb. 15, 2017) at 285.

Hodges testified that the substance of his letter was untrue, and that Solomon had not

given Hodges the card or authorized him to use it. Hodges said he was "shifting the blame to the

person that [he] thought owned the card," and that he "would have perpetrated a fraud on [the]

Court" in an effort to dismiss his charges. 3 VRP (Feb. 15, 2017) at 294-95. He testified that he

would have committed fraud on the court because it was important to him to avoid charges.

During closing arguments, Hodges argued:

"Well, that looks like a D to me," again, spontaneous. He said, "I didn't know the
name that was on that card. I scribbled a name on it." He testified in court that it
turned out to be—he scribbles his boss's name because he scribbles his boss's name
on the credit card at work. And you'll get this. You know, if you—if you look at
this and you say that says "Dean Solomon," I guess you're going to convict him.
But if you look at this and say that's a scribble, looks like a D and a scribble, then
you know he is telling you the truth. You know he is telling you the truth. You'll
have that back there, and you all can study that as long as you can. That does not
say Dean Solomon.

And before I leave that point, Mr. Hodges says, "I'm not going to write
Wally Clark or anybody—Wally Clark gave me the name. I['m] not going to write
Wally Clark's name because I am not Wally Clark. So I just scribble a name on
there so I don't get in trouble for writing somebody else's name." So that's—that's
a fact. These are things that came from the stand during this trial. Wally Clark,
Wally Clark, Wally Clark, Wally Clark. Reasonable inference, stole that card.

6

> Wally Clark handed that card to Mr. Hodges, and Mr. Hodges' behavior and how he used that card after it was given to him leads to the reasonable, common sense inference that he didn't know it was stolen. He had no knowledge it was stolen. He had no intent to commit a crime when he paid $20—plus, you'll see on the thing $19 on the receipt and he gave Mr. Christensen a dollar tip. It defies logic. It defies common sense that if he knew that card was stolen and if he intended to commit a crime, that that's the crime he chooses to commit with a stolen credit card. Now, come on. Do not lose your common sense. Look at this for what it is, and those are the facts.

3 VRP (Feb. 15, 2017) at 330-31.

The jury found Hodges guilty as charged.

C.    *Post Trial*

At the sentencing hearing, Johnston asked to withdraw because Hodges blamed him for the guilty verdict. The court allowed Johnston to withdraw and Hodges to proceed pro se. Hodges, acting pro se, moved for a mistrial and for dismissal. Hodges claimed that he received ineffective assistance of counsel, and that he had "proof that the prosecutor has led all three of our witnesses of committing perjury." 4 VRP (March 10, 2017) at 369-70. The State objected, and Hodges asked the court to appoint new counsel. The court appointed new counsel and set a new hearing date.

Hodges returned with new counsel and filed a motion for new trial under CrR 7.5. He argued he was entitled to a new trial based on CrR 7.5(a)(4), (5), and (8). He claimed that law enforcement's lack of investigation into his claims, Clark, and the case generally constituted misconduct by the prosecution and an irregularity in the proceedings under CrR 7.5(a)(2) and (5). He also claimed that he received ineffective assistance of counsel, entitling him to a new trial under CrR 7.5(a)(8).

7

In his motion for new trial, Hodges stated, in an unsigned declaration, that Clark e-mailed Maltby, telling him that Hodges was innocent. Hodges also stated that Clark exchanged text messages with Maltby's investigator. Hodges stated that he repeatedly asked Johnston to obtain the e-mails and text messages regarding Clark, but that Johnston did not get the evidence. Hodges also claimed that Christensen's and Officer Jahner's testimony was incorrect because they contradict his testimony that Hodges gave the card to the supervisor at Tower Lanes.[2] Hodges also claimed that Solomon illegally obtained his letter to Clark, and therefore it should not have been admitted. The court denied Hodges's motion for new trial.

At sentencing, Hodges stipulated to his prior offender score, which was 9+. Hodges requested an exceptional sentence downward, based in part on his serious medical conditions and the relatively low value of the transaction. The court considered the request, but found that an exceptional sentence downward was not warranted. The court noted that it was not "entirely an easy case because the circumstances of the case, yes, it was $20. It was for an outing with his grandchild." 6 VRP (June 8, 2017) at 429. But the court found that Hodges's testimony about the letter made it clear that Hodges knew that the card did not belong to him and "that he was willing to put a fraud on the Court in order to get out of liability here." 6 VRP (June 8, 2017) at 429. The court stated that it "cannot find that there are the substantial and compelling circumstances to warrant an exceptional [sentence] downward." 6 VRP (June 8, 2017) at 429.

---

[2] In support of his motion for a new trial, Hodges cites to exhibits, presumably attached to his declaration. However, the record on appeal does not contain exhibits to Hodges's motion for new trial. It is Hodges's burden to provide this court with an adequate record for review. RAP 9.2(b); *Stiles v. Kearney*, 168 Wn. App. 250, 259, 277 P.3d 9 (2012).

The court acknowledged that although Hodges had an extensive criminal history, he did not have any felony convictions in the last nine years.

The court sentenced Hodges to 48 months of confinement on second degree identity theft, with 12 months of community custody, and 26 months of confinement on second degree possession of stolen property, to run concurrently. Hodges appeals.

ANALYSIS

Hodges argues that the State failed to present sufficient evidence to support his convictions, that he received ineffective assistance of counsel, and that the trial court abused its discretion by denying his motion for new trial. We disagree.

A.      *Sufficiency of the Evidence*

Hodges argues that the State presented insufficient evidence of second degree identity theft and second degree possession of stolen property. Specifically, he argues that the State failed to prove that he knew that he was using a stolen credit card. We disagree.

Due process requires the State to prove every element of the charged crimes beyond a reasonable doubt. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). We review sufficiency of evidence claims for whether, when viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a challenge to the sufficiency of the evidence, the defendant admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Homan*, 181 Wn.2d at 106. Direct and circumstantial evidence are considered equally reliable. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). We also "defer to the trier of fact on issues of

conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

  1. *Sufficient Evidence Supports Possession of Stolen Property Conviction*

To convict Hodges of possessing stolen property, the State must prove that he possessed the property, that the property was stolen, and that Hodges knew that the property was stolen. RCW 9A.56.160. Knowledge that the item is stolen is an element of second degree possession of stolen property. RCW 9A.56.140, .160. Direct evidence and circumstantial evidence are equally reliable to establish knowledge. *Farnsworth*, 185 Wn.2d at 775. Although mere possession is insufficient to establish knowledge, possession of recently stolen property together with slight corroborative evidence will support a conviction for possession of stolen property. *State v. Scoby*, 117 Wn.2d 55, 61-62, 810 P.2d 1358, 815 P.2d 1362 (1991); *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). The other corroborative evidence can consist of a false or improbable explanation or inconsistent explanations. *State v. Ladely*, 82 Wn.2d 172, 175, 509 P.2d 658 (1973); *State v. Rockett*, 6 Wn. App. 399, 403, 493 P.2d 321 (1972). We defer to the jury on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75.

Taking the evidence in the light most favorable to the State, we hold that Hodges's dubious and inconsistent explanation about the card, and his attempt to sign the receipt with the name of the cardholder was sufficient corroborative evidence to prove that he knew the card was stolen. *See Scoby*, 117 Wn.2d at 62; *see State v. Hatch*, 4 Wn. App. 691, 694, 483 P.2d 864 (1971) (holding that possession of recently stolen property coupled with a dubious account of its acquisition are sufficient facts to support conviction).

10

2. *Sufficient Evidence Supports Identity Theft Conviction*

Hodges argues that the State failed to present sufficient evidence because the State failed to prove that he knew he was using a stolen card. Specifically, Hodges asserts that an "essential element" of second degree identity theft is that he "knew he was using a stolen" credit card. Br. of Appellant at 44. We disagree.

The essential elements of the crime are those that the prosecution must prove to sustain a conviction. *State v. Mason*, 170 Wn. App. 375, 378-79, 285 P.3d 154 (2012). In determining the essential elements, we first look to the statute. *Mason*, 170 Wn. App. at 379. RCW 9.35.020(1) provides that a person is guilty of identity theft when he or she knowingly obtained, possessed, used, or transferred a means of identification or financial information of another person, with the intent to commit any crime.

The State was required to prove that Hodges knowingly used a means of identification or financial information of another person, and that he knew that means of identification or financial information belonged to another person. The State was not, however, required to prove that he knew that the card was stolen. Because the State was not required to prove that Hodges knew he was using a stolen credit card, Hodges's argument that the State failed to present sufficient evidence of second degree identity theft fails.

B.      *Ineffective Assistance of Counsel*

Hodges argues that he received ineffective assistance from his trial counsel. We hold that trial counsel was not ineffective.

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish a claim of ineffective assistance of counsel,

11

Hodges must show both deficient performance and resulting prejudice. *State v. McFarland*, 127

Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Ineffective assistance of counsel is a two-prong

inquiry. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on an ineffective

assistance of counsel claim, a defendant must show that defense counsel's performance was

deficient, and the deficient performance prejudiced the defendant. *Grier*, 171 Wn.2d at 32. A

failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d

563 (1996).

There is no ineffective assistance when counsel's complained of actions are trial tactics

or go to the theory of the case. *Grier*, 171 Wn.2d at 33. There is a strong presumption that

defense counsel's conduct was not deficient. *McFarland*, 127 Wn.2d at 335. Because of this

presumption, "the defendant must show in the record the absence of legitimate strategic or

tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336.

The reviewing court will not consider matters outside the record on direct appeal. *State v.

Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018). Issues that require consideration of

evidence or facts not in the trial record are more properly the subject of a personal restraint

petition. *Linville*, 191 Wn.2d at 525.

1. *Failure To Investigate and Present Evidence*

Hodges argues that he received ineffective assistance from his trial counsel when counsel

failed to investigate and present evidence. To be effective, trial counsel must investigate the

case. *State v. Jones*, 183 Wn.2d 327, 339, 352 P.3d 776 (2015). This duty to investigate

includes interviewing witnesses. *Jones*, 183 Wn.2d at 339. "While [trial] counsel is not required

to interview every possible witness, the failure to interview witnesses who may provide

corroborating testimony may constitute deficient performance." *State v. Weber*, 137 Wn. App. 852, 858, 155 P.3d 947 (2007).

Counsel's duty includes making reasonable investigations, or making a reasonable decision that renders particular investigations unnecessary. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 355, 325 P.3d 142 (2014). The decision whether to call a witness is generally presumed to be a matter of trial strategy or tactics, but this presumption may be overcome by showing that the witness was not presented because counsel failed to conduct appropriate investigations. *State v. Thomas*, 109 Wn.2d 222, 230, 743 P.2d 816 (1987).

a. *Witnesses*

Hodges argues that he received ineffective assistance from his trial counsel when counsel failed to investigate witnesses. Specifically, Hodges argues that defense counsel was ineffective by failing to investigate and present witnesses, namely Clark who could possibly "testify that [Hodges] had nothing to do with the offenses," and his daughter and Zimmerman, who could have corroborated his testimony about the sequence of events at the bowling alley. Br. of Appellant at 26. The record does not show whether Clark, Hodges's daughter, or Zimmerman would have provided testimony beneficial to the defense. Hodges's argument relies on matters outside of the record that this court cannot review. *Linville*, 191 Wn.2d at 525.

Hodges argues that Clark "sent emails and texts to [Maltby] stating that he received the card from Ms. Solomon and corroborating that he provided the card to Mr. Hodges and that he is innocent." Br. of Appellant at 26. To support his assertion that Clark communicated with Maltby, he cites to his motion for new trial. However, Hodges's motion for a new trial contains

13

an unsigned declaration and cites to exhibits not in the record on appeal. The record does not contain any evidence about what Clark may have known or would have testified to.

Hodges also claims that his daughter and Zimmerman would have testified that Hodges gave the card to Zimmerman before the police arrived, corroborating his testimony and rebutting Officer Jahner's and Christensen's testimony. He argues that offering the "correct sequence" of events would have been pivotal to his defense because it would have demonstrated that he did not know that the card was stolen. Br. of App. at 28. But this argument also relies on evidence outside the record on appeal. The record does not contain any information about what Hodges's daughter or Zimmerman would have testified to.[3]

Hodges relies on matters outside of the record to support each of his ineffective assistance of counsel claims. Matters that are outside of the record cannot be considered on direct appeal. *Linville*, 191 Wn.2d at 525. If Hodges wishes a reviewing court to consider matters outside the record, a personal restraint petition is the appropriate procedure, and we do not address these claims. *Linville*, 191 Wn.2d at 525.

b. *Exculpatory Evidence*

Hodges argues that defense counsel failed to present exculpatory evidence. Specifically, he argues that counsel failed to obtain "exculpatory emails and texts" between Clark and Maltby, and that counsel failed to investigate and present evidence regarding the earlier transactions on the card. Br. of Appellant at 30.

---

[3] Further, despite Hodges's arguments, the record shows that Hodges named an "Ashley Hodges" as a witness, and that Hodges and his trial counsel discussed whether to have his daughter testify. CP at 221.

As discussed above, full consideration of Hodges's claim regarding communications between Clark and Hodges's former attorney appears to require knowledge of facts and evidence that are not part of this court's record.

Hodges contends that without evidence of who made those earlier transactions on the card, the jury could speculate that Hodges used it the day before, even though he testified that he received it at the party. The record does not contain any information about whether counsel investigated, or any reasons for not investigating. Because his claims rely on matters outside this court's record, we do not consider the issues. *Linville*, 191 Wn.2d at 525.

2. *Missing Witness Instruction*

Hodges asserts that defense counsel was deficient for failing to propose a missing witness instruction for Clark. To show that he received ineffective assistance of counsel based on counsel's failure to request a particular jury instruction, Hodges must show that he was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice. *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 718, 327 P.3d 660 (2014), *abrogated by State v. Gregory*, 192 Wn.2d 1 (2016).

"A missing witness instruction informs the jury that it may infer from a witness's absence at trial that his or her testimony would have been unfavorable to the party who would have logically called that witness." *State v. Reed*, 168 Wn. App. 553, 571, 278 P.3d 203 (2012). If a party fails to call a particular witness or present certain evidence when it would seem logical to do so, an inference may arise that the evidence or testimony would have been unfavorable to the party. *State v. Montgomery*, 163 Wn.2d 577, 598-99, 183 P.3d 267 (2008). A court should give a missing witness instruction only if three criteria are satisfied:

First, the doctrine applies only if the potential testimony is material and not cumulative. Second, the doctrine applies only if the missing witness is particularly under the control of [one party] rather than being equally available to both parties. Third, the doctrine applies only if the witness's absence is not satisfactorily explained.

*Montgomery*, 163 Wn.2d at 598-99 (citations omitted).

Hodges has not demonstrated, and the record does not show, that he was entitled to a missing witness instruction for Clark. There is no evidence that Clark would have provided testimony beneficial to Hodges, and there is no evidence that he was particularly available to the State.[4] Further, both parties represented to the trial court that Clark was unavailable, when the State noted that "Clark is not available to testify," and defense counsel agreed that "Clark is long gone." 3 VRP (Feb. 15, 2017) at 265. The record on appeal does not contain any other information about Clark's whereabouts.

Because there is no evidence that Clark was particularly available to the State, Hodges has not demonstrated that he was entitled to a missing witness jury instruction. Therefore, we hold that defense counsel's failure to request a missing witness instruction did not constitute ineffective assistance.

3. *Failure To Impeach Solomon*

Hodges argues that defense counsel provided ineffective assistance by failing to impeach Solomon. Specifically, he argues that counsel should have "impeach[ed] [Solomon] regarding

---

[4] Hodges states that "Clark was known to be incarcerated at the time therefore available for service." Br. of App. at 9. But, Hodges does not cite to the record to support the assertion.

[her] acquisition of a letter addressed to someone else," and obtained in violation of federal law.[5] Br. of Appellant at 31.

The extent and method of cross-examination is a matter of judgment and trial strategy. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720, 101 P.3d 1 (2004); *State v. Jonhston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007). We will not find ineffective assistance of counsel based on trial counsel's decisions during cross-examination if counsel's performance fell within the range of reasonable representation. *Johnston*, 143 Wn. App. at 20.

Solomon testified that she received the letter with her mail, but that the letter was not in an envelope. Hodges, however, contends that he sent the letter to Clark in an envelope. Hodges posits that therefore, Solomon must have improperly obtained the letter, in violation of federal law. And because Solomon must have improperly obtained the letter, counsel should have impeached her.

On cross-examination, Hodges's counsel questioned Solomon about her discovery of the letter. Consistent with her testimony on direct, Solomon responded that the letter was not in an envelope when she found it in her mailbox. The extent and method of cross-examination is a tactical matter. *Davis*, 152 Wn.2d at 720. Hodges fails to show in the record that defense counsel's failure to impeach Solomon was not a legitimate trial tactic. Thus, Hodges fails to show that counsel's performance was deficient. *Linville*, 191 Wn.2d at 525. We hold that Hodges has failed to demonstrate that counsel was ineffective by failing to impeach Solomon.

---

[5] Hodges also contends that counsel provided ineffective assistance by "stipulat[ing] to [its] admission." Br. of Appellant at 3. Hodges's fails to cite to the record to support his claim. The record demonstrates that counsel stipulated to *the chain of custody* of the letter. The record does not show that counsel stipulated to the admission of the letter.

4. *Closing Argument*

Hodges argues that defense counsel provided ineffective assistance by inviting the jury to convict Hodges. Specifically, Hodges argues that counsel's argument relieved "the State of its burden to prove the essential fact of the signature and by conceding it was possible that the name was Dean Solomon instead of 'D' followed by a scribble." Br. of Appellant at 36 (citing 3 VRP (Feb. 15, 2017) at 330).

Counsel made a tactical decision to argue that the evidence was subject to reasonable explanation, and that the State had not met its burden of proof. Hodges cannot show on the record that counsel's argument was not tactical, and thus cannot meet his burden to show that counsel's argument was not tactical. *Linville*, 191 Wn.2d at 525; *Grier*, 171 Wn.2d at 33. The receipt was admitted into evidence, and the jury was able to evaluate the signature for itself. We hold that Hodges fails to demonstrate that counsel's argument was deficient or resulted in prejudice.

5. *Same Criminal Conduct at Sentencing*

Hodges argues that counsel provided ineffective assistance by failing to argue that his convictions for identity theft and possession of stolen property were the same criminal conduct. Hodges's claim fails because he cannot demonstrate prejudice.

At sentencing, the offender score is calculated by adding a specified number of points for each prior offense. RCW 9.94A.525.7. However, for purposes of this calculation, current offenses are treated as prior convictions. RCW 9.94A.589(1)(a). Therefore, a sentencing court's determination that the crimes constitute the same criminal conduct alters the offender score and affects the standard sentencing range. *State v. Aldana Graciano*, 176 Wn.2d 531, 535, 295 P.3d

219 (2013). "Crimes constitute the 'same criminal conduct' when they 'require the same criminal intent, are committed at the same time and place, and involve the same victim.'" *Aldana Graciano*, 176 Wn.2d at 536 (quoting RCW 9.94A.589(1)(a)). The defendant bears the burden of proving that his or her multiple convictions constituted the same criminal conduct. *Aldana Graciano*, 176 Wn.2d at 538-39.

Counsel's failure to make a same criminal conduct argument is prejudicial if the defendant shows that the *sentence* would have differed had counsel made the argument. *State v. Munoz–Rivera*, 190 Wn. App. 870, 887, 361 P.3d 182 (2015). Here, Hodges stipulated to his prior offender score, and concedes that his offender score of 9+ would have been unchanged by a finding of same criminal conduct. We hold that Hodges's claim that counsel provided ineffective assistance by failing to argue same criminal conduct fails because he cannot demonstrate that counsel's performance was prejudicial. *Hendrickson*, 129 Wn.2d at 78.

Hodges contends that a finding of the same criminal conduct "would have at least been supportive of counsel's argument for an exceptional sentence downward." Br. of Appellant at 39. But a showing of prejudice requires that the appellant demonstrate "a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Grier*, 171 Wn.2d at 34 (citations omitted). Hodges has not shown that "supporting" counsel's argument for an exceptional sentence downward would have changed the outcome of the proceedings.

6. *Sentencing*

Hodges argues that trial counsel provided ineffective assistance by failing to cite relevant case law when requesting an exceptional downward sentence. Specifically, Hodges contends

that counsel's motion for an exceptional sentence "merely cite[d] basic statutory law and gave no concrete basis for an exceptional sentence," and that counsel should have made arguments based on Hodges's medical issues. Br. of Appellant at 40. Hodges's argument fails.

Counsel is deficient for failing to recognize and cite appropriate case law. *State v. Adamy*, 151 Wn. App. 583, 588, 213 P.3d 627 (2009), as amended (Sept. 17, 2009). Hodges requested an exceptional downward sentence, citing the standard provisions allowing a court to consider an exceptional sentence RCW 9.94A.010, .535. At sentencing, Hodges argued that an exceptional downward sentence was appropriate based on Hodges's medical issues. Hodges does not identify what relevant law counsel should have recognized, and thus fails to meet his burden to demonstrate that counsel was deficient.

C.      *Motion for New Trial*

Hodges contends that the trial court erred by denying his motion for a new trial. Specifically, he argues that he demonstrated that he was entitled to a new trial based on (1) ineffective assistance of counsel, and (2) inadequate police investigation. Hodges's arguments fail.

We review a trial court's decision whether or not to grant a new trial for an abuse of discretion. *State v. McKenzie*, 157 Wn.2d 44, 51, 134 P.3d 221 (2006). We will not disturb the trial court's ruling absent a clear abuse of discretion. *McKenzie*, 157 Wn.2d at 51-52. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds, or when no reasonable judge would have reached the same decision. *McKenzie*, 157 Wn.2d at 52; *State v. Larson*, 160 Wn. App. 577, 586, 249 P.3d 669 (2011).

20

A trial court may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected:

> (1) Receipt by the jury of any evidence, paper, document or book not allowed by the court;
> (2) Misconduct of the prosecution or jury;
> (3) Newly discovered evidence material for the defendant, which the defendant could not have discovered with reasonable diligence and produced at the trial;
> (4) Accident or surprise;
> (5) Irregularity in the proceedings of the court, jury or prosecution, or any order of court, or abuse of discretion, by which the defendant was prevented from having a fair trial;
> (6) Error of law occurring at the trial and objected to at the time by the defendant;
> (7) That the verdict or decision is contrary to law and the evidence;
> (8) That substantial justice has not been done.

CrR 7.5(a)(1)-(8).

1. *Ineffective Assistance of Counsel*

Ineffective assistance of counsel may constitute substantial injustice under CrR 7.5(a)(8). *State v. Dawkins*, 71 Wn. App. 902, 906-07, 863 P.2d 124 (1993). However, as discussed above, Hodges's arguments that he received ineffective assistance of counsel fail. Accordingly, his argument that the trial court erred by not granting a new trial based on ineffective assistance of counsel also fails.

2. *Inadequate Police Investigation*

Hodges also argues that he was entitled to a new trial under CrR 7.5(a)(8) because the State and the police department failed to thoroughly investigate the prior charges on Solomon's card. Specifically, Hodges claims that police should have investigated who used the card prior to when he purportedly took possession. The investigation was critical, he contends, because it would have provided information about how Clark acquired the card. And information about

21

how Clark acquired the card would have "constituted substantive evidence supporting the defense theory at trial that Mr. Hodges was unaware that the card was stolen and unaware that its use was not authorized by Ms. Solomon." Br. of App. at 22. The State correctly notes that Hodges was not charged with making the earlier transactions.

To support his argument, Hodges cites *State v. Jones*, 25 Wn. App. 746, 751, 610 P.2d 934 (1980). But *Jones* is distinguishable. *Jones* held that it was error to prevent the defendant from presenting evidence of the State's witness's bias against the defendant. 25 Wn. App. at 750-51. *Jones* does not stand for the proposition that law enforcement is required to investigate uncharged events to provide support for the defendant's theory.

Regardless of what the police may have found had they investigated the earlier transactions, the State does not have an obligation to search for exculpatory evidence, or to expand the scope of a criminal investigation. *State v. Armstrong*, 188 Wn.2d 333, 345, 394 P.3d 373 (2017); *State v. Judge*, 100 Wn.2d 706, 717, 675 P.2d 219 (1984). Hodges has not established that substantial justice was not done by law enforcement's failure to investigate the earlier transactions. The trial court's decision to deny his motion for a new trial based on law enforcement's failure to investigate was not unreasonable or based on untenable grounds. Hodges has not shown that the trial court abused its discretion by denying his motion for a new trial.

D.      *Cumulative Error*

Hodges argues that cumulative error and cumulative ineffective assistance of counsel deprived him of a fair trial. The cumulative error doctrine applies when several errors occurred at the trial level, none of which alone warrants reversal, but the combined errors effectively

22

No. 50582-7-II

denied the defendant a fair trial. *State v. Hodges*, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). Hodges has not demonstrated that he received ineffective assistance of counsel, or that any error occurred. Accordingly, the cumulative error doctrine does not apply.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, C.J.

Glasgow