IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78429-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| HARVEY, MICHAEL MATTHEW, | ) | |
| DOB: 01/21/1995, | ) | |
| | ) | |
| Appellant. | ) | FILED: November 18, 2019 |

SCHINDLER, J. — A jury convicted Michael Matthew Harvey of committing the crime of possession of a stolen motor vehicle while on community custody. Harvey seeks reversal, arguing insufficient evidence supports the jury finding that he knew the vehicle was stolen and prosecutorial misconduct during closing argument deprived him of the right to a fair trial. We affirm.

FACTS

In November 2017, Brandi and Adam Skinner lived at 22930 35th Avenue Southeast in Bothell. The Skinners were in the process of moving to a new home. There was a "for sale" sign posted at the end of their driveway. The Skinners packed and stored personal items in their garage. The Skinners also stored snowboards and

speakers in the garage. The garage included a "shop" section where Adam[1] stored his tools. Brandi kept her green Ford Mustang and the keys to the car in the garage. The Mustang "had been sitting [in the garage] for a little over two years. It wasn't running." Brandi had not renewed the registration for the Mustang or insured it for a couple of years. The Skinners "had just got it up and running" around the end of October. The garage door was broken and did not lock.

Brandi left home at around 4:50 a.m. on November 8, 2017 to drive to work in her Kia Rio. Adam left to drive to work in his truck at 6:05 a.m. The Skinners parked the Kia and the truck in the driveway.

At around noon on November 8, Lynnwood Police Officer Russ Sattarov noticed a green Ford Mustang had expired registration tabs. The person driving the car was male. Officer Sattarov also noticed the car was "incredibly clean, as if it just came out from the garage," which was unusual because most cars in November are "covered in . . . grayish film." Officer Sattarov checked the registration and learned the tabs had been expired "for a little bit over two years" and the car was registered to Brandi Skinner.

Officer Sattarov made a U-turn. Officer Sattarov was driving "immediately behind" the Mustang when he activated the lights and siren on the police car. The driver did not stop. "The driver took a really sharp turn without slowing down," "drove into a dead-end cul-de-sac type of street," "abruptly turned into a private driveway[,] and stopped."

Officer Sattarov got out of his patrol car and approached the Mustang. Officer Sattarov asked the driver, later identified as Michael Matthew Harvey, for his driver's

---

[1] For clarity, we refer to the parties by their first names. We intend no disrespect.

license. Harvey responded, " 'I don't have it.' " Officer Sattarov asked Harvey what he meant and Harvey told Officer Sattarov, " 'I'm working on it.' " Officer Sattarov asked Harvey to identify himself. Harvey refused to provide his name. Officer Sattarov explained that he "could use his name to find out what his driver's status is" and asked for his name again. Harvey refused to give his name. Officer Sattarov told Harvey that "it is unlawful for a driver to refuse to identify himself during a traffic stop." When Harvey still refused to provide his name, Officer Sattarov arrested him.

Officer Sattarov called Brandi at around 12:15 p.m. Brandi gave Officer Sattarov permission to search the Mustang. Officer Sattarov sent Brandi photographs of the personal property found in the Mustang. Brandi identified the snowboards in the backseat. Brandi said no one had placed the snowboards that had been in their garage in the Mustang. Brandi identified the speakers, tools, nail guns, and drills found in the trunk of the Mustang that had been stored in their garage.

The State charged Harvey with possession of a stolen vehicle committed while on community custody in violation of RCW 9A.56.068 and RCW 9.94A.525(19) and possession of stolen property in the second degree in violation of RCW 9A.56.160(1)(a).

The State called a number of witness to testify at trial, including Officer Sattarov, Brandi, and Adam. The State also admitted a number of exhibits into evidence at trial, including photographs of the Mustang, photographs of the property that was in the Mustang when Officer Sattarov arrested Harvey, and a printout from the Washington State Department of Licensing showing Harvey's identification card issued five days before the Mustang was stolen. The identification card includes Harvey's driver's license number, his photograph, and his address.

3

Officer Sattarov testified that after identifying Harvey as the driver of the Mustang, he compared the address on Harvey's identification card with the address of the registered owner of the Mustang. Officer Sattarov testified that Harvey lived near the area where Officer Sattarov pulled over the Mustang and it would take approximately 11 minutes to walk from Harvey's house to the Skinners' house.

Brandi testified she had never met Harvey and did not give him or anyone else permission to drive her Mustang. Brandi testified she had not given anyone permission to put any of the personal property that was in their garage in the Mustang. Brandi identified the snowboards found in the backseat of the Mustang and the speakers and tools found in the trunk as item that were stored in the garage and belonged to her family. Brandi testified a black backpack, a pair of gloves, and tinfoil found in the Mustang after Harvey's arrest did not belong to her or her family.

Adam testified that the green Mustang was in the garage when he left for work the morning of November 8, 2017. Adam testified that he did not know Harvey or give Harvey permission to drive the Mustang. Adam testified the personal property found in the Mustang was stored in the garage belonging to him and his family. In addition to the property Brandi identified, Adam identified nail guns, finish guns, a drill motor, a screw gun, boots, and a laser level that were found in the Mustang when Harvey was arrested as property that he stored in the garage.

The jury found Harvey guilty of the crime of possession of a stolen motor vehicle committed while on community custody. The jury found Harvey not guilty of possession of stolen property in the second degree.

ANALYSIS

Possession of a Stolen Vehicle

Harvey contends insufficient evidence supports the conviction of possession of a stolen motor vehicle. Harvey argues the State did not prove that he knowingly possessed a stolen motor vehicle.

The State has the burden to prove every element of the crime charged beyond a reasonable doubt. U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Winship, 397 U.S. at 364; State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The sufficiency of the evidence is a constitutional question we review de novo. Rich, 184 Wn.2d at 903.

Evidence is sufficient if after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Owens, 180 Wn.2d 90, 99, 323 P.3d 1030 (2014). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We consider both direct and circumstantial evidence as equally reliable and defer to the trier of fact on the persuasiveness of the evidence and issues of witness credibility. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

A person commits the crime of possession of a stolen vehicle in violation of RCW 9A.56.068(1) "if he or she . . . possesses . . . a stolen motor vehicle." The State must prove Harvey "knowingly" possessed a stolen motor vehicle. RCW 9A.56.140(1); State v. Porter, 186 Wn.2d 85, 90, 375 P.3d 664 (2016). A person "acts knowingly" when he is "aware of a fact" or "has information which would lead a reasonable person in the same situation to believe that facts exist" that are "described by a statute defining an offense." RCW 9A.08.010(1)(b).

Evidence of either actual or constructive knowledge can support an inference of knowledge. State v. Rockett, 6 Wn. App. 399, 402, 493 P.2d 321 (1972). Inferences based on circumstantial evidence must be reasonable and cannot be based on speculation. State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013). "Although knowledge may not be presumed because a reasonable person would have knowledge under similar circumstances, it may be inferred." State v. Womble, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999).

Mere possession of recently stolen property is insufficient to establish that the possessor knew the property was stolen. State v. Couet, 71 Wn.2d 773, 775, 430 P.2d 974 (1967); Womble, 93 Wn. App. at 604. Constructive knowledge is determined by looking at the context surrounding the defendant's possession of the vehicle. Rockett, 6 Wn. App. at 402. A jury may infer guilty knowledge when the State proves possession of a recently stolen vehicle and provides "slight corroborative evidence of other inculpatory circumstances tending to show guilt." State v. Ford, 33 Wn. App. 788, 790, 658 P.2d 36 (1983). Slight corroborative evidence of other inculpatory circumstances showing a defendant's guilt will support a conviction. State v. Portee, 25 Wn.2d 246,

253-54, 170 P.2d 326 (1946). A jury may infer actual knowledge when the defendant cannot explain his possession of a recently stolen vehicle. Rockett, 6 Wn. App. at 403.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, sufficient evidence supports the jury finding Harvey knew the Mustang was stolen. There is no dispute the Mustang was in the garage when Brandi and Adam left for work on November 8 and they did not know Harvey or give him or anyone else permission to drive the Mustang.

A "for sale" sign was posted at the end of the driveway of the Skinners' house. The keys to the Mustang were in the garage on November 8. The uncontroverted evidence established the Mustang had been in the garage for approximately two years, Brandi had not renewed the registration or paid insurance, and they had only recently fixed the Mustang. Personal property, including snowboards and tools, were stored in the garage. The garage door was broken and could not be locked.

Officer Sattarov noted the registration tabs on the Mustang had been expired for two years and the Mustang looked "as if it just came out from the garage." Harvey did not immediately stop when Officer Sattarov tried to pull him over at approximately 12:00 p.m. on November 8. Harvey admitted he did not have a driver's license but refused to give his name to Officer Sattarov despite multiple opportunities to comply with the request. The uncontroverted evidence established snowboards, tools, and other personal property from the Skinners' garage were in the Mustang. The identification card issued to Harvey five days before the Mustang was stolen shows he lives near the Skinners. Sufficient evidence supports the jury finding Harvey knew the Mustang was stolen.

7

Closing Argument

Harvey argues the prosecutor committed misconduct during closing argument by commenting on his constitutional right to silence. The record does not support his argument.

We review allegations of prosecutorial misconduct during closing argument for abuse of discretion. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). To prevail on a claim of prosecutorial misconduct, the defendant must "show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).

The prosecutor may not comment on a defendant's "constitutionally permitted silence as substantive evidence of guilt." State v. Romero, 113 Wn. App. 779, 787, 54 P.3d 1255 (2002).[2] However, the State may introduce evidence that does not implicate the constitutional right to silence as evidence of consciousness of guilt. State v. Mecham, 186 Wn.2d 128, 150, 380 P.3d 414 (2016). Evidence of resistance to arrest, concealment, assumption of a false name, and other related conduct is proper if it allows a reasonable inference of consciousness of guilt of the charged crime. State v. Freeburg, 105 Wn. App. 492, 497-98, 20 P.3d 984 (2001).

At the CrR 3.5 hearing, the prosecutor argued that the statements Harvey made to Officer Sattarov before being advised of his Miranda[3] rights were admissible. Defense counsel conceded that "prior to" the arrest, Harvey's "statements are

---

[2] Emphasis added.

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

admissible as part of a Terry[4] stop." The defense attorney argued the statements

Harvey made after he was advised of his Miranda rights and invoked his right to remain

silent were not admissible. The court ruled the statements Harvey made before he was

advised of his Miranda rights and invoked his right to silence were admissible but the

statements he made after he invoked his right to remain silent were not admissible.

During the hearing on the motions in limine, defense counsel reiterated the

court's ruling that any statements made after Harvey invoked his right to silence were

inadmissible. In response, the prosecutor notes her understanding of the court's ruling:

> Prior to [Harvey] saying that I have nothing further to say, the defendant
> said he didn't have his license, he was working on getting it. When asked
> his name, he would say I don't know if I have to give that to you, or I don't
> want to give it to you. So I want to make sure that those things are okay,
> and it's just the "I have nothing further to say" that the officers are not
> allowed to repeat or comment on.

Defense counsel agreed that the statements Harvey made before Officer Sattarov read

him his Miranda rights are admissible—"That's my understanding of the 3.5 rulings, is

exactly that."[5]

The State argued it should also be allowed to introduce evidence that Officer

Sattarov read Harvey his Miranda rights. Defense counsel objected. The court ruled

the evidence is inadmissible because "[i]f there's going to be testimony that the rights

---

[4] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[5] Case law supports the defense attorney's concession that the statements Harvey made before he was arrested and read his Miranda rights were admissible. See State v. Stratton, 139 Wn. App. 511, 515-16, 161 P.3d 448 (2007) (holding defendant's refusal to answer an officer's multiple identification questions during a traffic stop did not violate the right to remain silent under the Fifth Amendment to the United States Constitution). Under RCW 46.61.021(3), "[a]ny person requested to identify himself or herself to a law enforcement officer pursuant to an investigation of a traffic infraction has a duty to identify himself or herself and give his or her current address." Harvey does not challenge the constitutionality of RCW 46.61.021.

were read and then no further discussion about what was said, I don't want to give the jury any sort of inference that they could latch onto."

Without objection during closing argument, the prosecutor properly addressed the statements Harvey made before he was arrested as evidence that Harvey knew the Mustang was stolen:

> When the defendant was stopped by Deputy Sattarov, he testified on cross that other than the expired tabs, there's nothing about the defendant's driving that really would have caused him to stop him. So why would the defendant refuse to give his name or refuse to give his identification? He doesn't want the officer to know that the car doesn't belong to him.

During the defense closing argument, counsel addressed the refusal of Harvey to identify himself:

> Now, the evidence that the State is relying on is pretty simple. They want you to infer guilt because Mr. Harvey was nervous when he was pulled over. The first thing he says is he doesn't have a license. The first thing he says is that I'm working on getting it. Clearly he didn't know how to react, knew that he had been caught driving without a license, and didn't know how to react to that. That's a reasonable inference for why he's acting that way.

During rebuttal, the prosecutor responded to the defense argument:

> Well, it's one thing to not turn over your license to the officer because your license is suspended, and it's one thing to be nervous that you've just been stopped because you're driving with your driver's license suspended. But so what? What is that? Like an infraction? He also refused to give his name because he knew the information returned on the vehicle isn't going to match him. It isn't his.

Because the uncontroverted record establishes the prosecutor did not improperly comment on Harvey's constitutional right to silence, we reject his prosecutorial misconduct argument.

10

    We affirm the jury conviction of possession of a stolen motor vehicle committed while on community custody.

_Schindler, J_

WE CONCUR:

_Mann, ACJ_                    _Chun, J._