[No. 17962–4–I. Division One. August 10, 1987.]

*In the Matter of* DANIEL WILLIAM EATON.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant,* LARRY EATON, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *Wendy Bohlke, Assistant,* for appellant.

*Joan H. McPherson,* for respondents.

DARRAH, J.*—This is an action under RCW 13.32A, Procedures for Families in Conflict. The Washington Department of Social and Health Services (DSHS) appeals an order requiring it to place Daniel Eaton at a specific treatment facility and a contempt order. DSHS contends the juvenile court exceeded its statutory authority both in ordering the placement and in awarding the parents and child their attorney fees. We affirm the placement but reverse the attorney fee award.

In October 1985, Daniel Eaton's mother petitioned for an alternative residential placement (ARP) pursuant to RCW 13.32A.150.[1] An agreed order on that petition was entered in December 1985, placing Daniel in inpatient alcoholism treatment at Olympic Center in Bellingham. *See* RCW 13.32A.170, .180.[2]

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

[1]RCW 13.32A.150 provides:

"A child or a child's parent may file with the juvenile court a petition to approve an alternative residential placement for the child outside the parent's home. The department shall, when requested, assist either a parent or child in the filing of the petition. The petition shall only ask that the placement of a child outside the home of his or her parent be approved. The filing of a petition to approve such placement is not dependent upon the court's having obtained any prior jurisdiction over the child or his or her parent, and confers upon the court a special jurisdiction to approve or disapprove an alternative residential placement."

[2]Former RCW 13.32A.170 provides in part:

A review hearing was held pursuant to RCW 13.32A-.190.[3] The record of that hearing is not before us, but apparently Daniel's parents put on expert testimony rec-

---

"(1) The court shall hold a fact–finding hearing to consider a proper petition and may approve or deny alternative residential placement giving due weight to the intent of the legislature that families, absent compelling reasons to the contrary, shall remain together and that parents have the right to place reasonable rules and restrictions upon their children. The court may appoint legal counsel and/or a guardian ad litem to represent the child and advise parents of their right to be represented by legal counsel. The court may approve an order stating that the child shall be placed in a residence other than the home of his or her parent only if it is established by a preponderance of the evidence that:

"(a) The petition is not capricious;

"(b) The petitioner, if a parent or the child, has made a reasonable effort to resolve the conflict;

"(c) The conflict which exists cannot be resolved by delivery of services to the family during continued placement of the child in the parental home; and

"(d) Reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home and to make it possible for the child to return home.

". . .

"(2) The order approving out–of–home placement shall direct the department to submit a disposition plan for a three–month placement of the child that is designed to reunite the family and resolve the family conflict. Such plan shall delineate any conditions or limitations on parental involvement. In making the order, the court shall further direct the department to make recommendations, as to which agency or person should have physical custody of the child, as to which parental powers should be awarded to such agency or person, and as to parental visitation rights. The court may direct the department to consider the cultural heritage of the child in making its recommendations.

". . .

"(4) If the court approves or denies a petition for an alternative residential placement, a written statement of the reasons shall be filed."

RCW 13.32A.180 provides in part:

"(1) At a dispositional hearing held to consider the three–month dispositional plan presented by the department the court shall consider all such recommendations included therein. The court, consistent with the stated goal of resolving the family conflict and reuniting the family, may modify such plan and shall make its dispositional order for a three–month out–of–home placement for the child. The court dispositional order shall specify the person or agency with whom the child shall be placed, those parental powers which will be temporarily awarded to such agency or person including but not limited to the right to authorize medical, dental, and optical treatment, and parental visitation rights. Any agency or residence at which the child is placed must, at a minimum, comply with minimum standards for licensed family foster homes."

[3]RCW 13.32A.190 provides in part:

ommending Secret Harbor as the best place for him, because he had run away from Olympic Center and it is almost impossible to run away from Secret Harbor since it is on an island. A DSHS caseworker appeared at that hearing and stated DSHS should process Daniel through its usual channels in order to decide whether he should go to Secret Harbor. The court entered an order on January 29, 1986, requiring DSHS to place Daniel at Secret Harbor as soon as there was an opening. The order also required a financial hearing (presumably to determine the parents' ability to pay for Secret Harbor) to be held within 6 months. *See* RCW 13.32A.175.[4]

DSHS did not appeal the January 29 order, but instead simply failed to comply with it. Daniel and his parents determined that Secret Harbor had a place available and would hold it open for Daniel for a limited time, provided 1 month's advance payment could be made. Daniel and his parents then moved for a hearing to show cause why DSHS should not be held in contempt. DSHS responded with a motion for relief from the January 29 order. The two

"(1) Upon making a dispositional order under RCW 13.32A.180, the court shall schedule the matter on the calendar for review within three months . . .

"(2) At the review hearing, the court shall approve or disapprove the continuation of the dispositional plan in accordance with the goal of resolving the conflict and reuniting the family which governed the initial approval. The court shall determine whether reasonable efforts have been made to reunify the family and make it possible for the child to return home. The court is authorized to discontinue the placement and order that the child return home if the court has reasonable grounds to believe that the parents have displayed concerted efforts to utilize services and resolve the conflict and the court has reason to believe that the child's refusal to return home is capricious. If out–of–home placement is continued, the court may modify the dispositional plan."

[4]RCW 13.32A.175 provides:

"In any proceeding in which the court approves an alternative residential placement, the court shall inquire into the ability of parents to contribute to the child's support. If the court finds that the parents are able to contribute to the support of the child, the court shall order them to make such support payments as the court deems equitable. The court may enforce such an order by execution or in any way in which a court of equity may enforce its orders. However, payments shall not be required of a parent who has both opposed the placement and continuously sought reconciliation with, and the return of, the child."

motions were both heard February 20, 1986.

The notice to DSHS of the show cause hearing was 1 day short of the 5–working–day notice required by CR 6. The court denied DSHS's request for a continuance, apparently on the ground DSHS had failed to show prejudice. The court ruled DSHS was in contempt, imposed sanctions and attorney fees, and denied DSHS's motion for relief.

DSHS then placed Daniel at Secret Harbor but filed a motion for discretionary review, which a court commissioner ruled would be treated as a notice of appeal. The only respondent appearing on this appeal is Daniel.

The parties agree the placement issue is moot, but DSHS urges us to address its appeal as a matter of substantial public interest. The assistant attorney general advised us at oral argument that, approximately twice a year, the courts of Whatcom, Skagit, and Island Counties order DSHS to make a specific placement contrary to DSHS's wishes in an ARP proceeding.

■ This is a case of first impression and we believe there is a substantial public interest in resolving the issue.

> The [appellate] Court may, in its discretion, retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are involved. Criteria to be considered in determining the "requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." This exception to the general rule obtains only where the real merits of the controversy are unsettled and a continuing question of great public importance exists.

(Citations omitted.) *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). We therefore choose to address DSHS's contentions.

DSHS argues there is no statutory authority for the court to order a specific placement. It contends it is in the best position to know the best interest of all the children of a particular region so as to allocate the limited resources

available among those children most in need.

■ The meaning of an act is to be gleaned from reading the entire statute as a whole. *Anderson v. Morris,* 87 Wn.2d 706, 558 P.2d 155 (1976); *State v. Leek,* 26 Wn. App. 651, 614 P.2d 209 (1980). If a statute is not ambiguous, there is no room for judicial interpretation. *State v. Leek, supra.* There is no need for deference to an agency's interpretation if the statute is not ambiguous. *Metropolitan Seattle v. Department of Labor & Indus.,* 88 Wn.2d 925, 568 P.2d 775 (1977).

■ We hold RCW 13.32A unambiguously states the Legislature's intent to require the court to order a specific placement. The court is vested with discretion to modify the dispositional plan recommended by DSHS. RCW 13.32A.180(1). The order approving the dispositional plan "shall specify the person or agency with whom the child shall be placed". RCW 13.32A.180(1). "Shall" in a statute is an imperative and has the effect of creating a duty. *Emwright v. King Cy.,* 96 Wn.2d 538, 637 P.2d 656 (1981). "Person" in a statute includes a public or private corporation as well as an individual. RCW 1.16.080. If the Legislature intended the child simply to be placed with DSHS, it could have so specified by using the term "department," as it does throughout RCW 13.32A when referring to DSHS, rather than "person or agency."[5]

At the 3–month review hearing held pursuant to RCW 13.32A.190, the court is again vested with discretion to modify the dispositional plan. Nothing in the statute bars the court from ordering a specific placement based upon the review hearing. Rather, it is only logical that if the court must order a specific placement in the first instance, it must also order a specific placement if the ARP is to be continued.

The purpose of an ARP is to nurture families in conflict,

---

[5]RCW 13.32A.030(1) provides:
"'Department' means the department of social and health services[.]"

RCW 13.32A.010,[6] by having DSHS assist families. *See* RCW 13.32A.150, 13.32A.170. In effectuating that purpose, the Legislature did not grant DSHS the ultimate decision-making authority over families in conflict. Rather, DSHS's function is to present *recommendations* to the court. RCW 13.32A.170, .180. The statute does not require a court to be bound by these recommendations. The *court* enters a dispositional order. RCW 13.32A.180. The *court* holds a review hearing. RCW 13.32A.190(1). The *court* may modify DSHS's proposed dispositional plan either at the initial hearing or at the review hearing. RCW 13.32A.180, .190. Judicial discretion is abused only when no reasonable person would have taken the action of the trial court. *State v. Pascal*, 108 Wn.2d 125, 139, 736 P.2d 1065 (1987); *State v. Armstrong*, 106 Wn.2d 547, 723 P.2d 1111 (1986).

Assuming arguendo RCW 13.32A is ambiguous, we would still hold the Legislature intended the juvenile court to have authority to order a specific placement. If two interpretations are possible, that which best serves the Legislature's purpose will be adopted. *Anderson v. Morris, supra.* Even though an agency's interpretation of an ambiguous statute is entitled to great weight, the ultimate authority for interpreting a statute nevertheless rests with the courts. *Safeco Ins. Cos. v. Meyering*, 102 Wn.2d 385, 687 P.2d 195 (1984); *Miller v. McCamish*, 78 Wn.2d 821, 479 P.2d 919 (1971); *McFadden v. Elma Country Club*, 26 Wn. App. 195, 613 P.2d 146 (1980).

---

[6]RCW 13.32A.010 provides:

"The legislature finds that within any group of people there exists a need for guidelines for acceptable behavior and that, presumptively, experience and maturity are better qualifications for establishing guidelines beneficial to and protective of individual members and the group as a whole than are youth and inexperience. The legislature further finds that it is the right and responsibility of adults to establish laws for the benefit and protection of the society; and that, in the same manner, the right and responsibility for establishing reasonable guidelines for the family unit belongs to the adults within that unit. The legislature reaffirms its position stated in RCW 13.34.020 that the family unit is the fundamental resource of American life which should be nurtured and that it should remain intact in the absence of compelling evidence to the contrary."

DSHS objects not only to the order requiring a specific placement, but also to the fact it was ordered to *pay* for Daniel's placement at Secret Harbor. Daniel's parents desired DSHS's assistance because Secret Harbor would not accept Daniel unless it could be assured of 1 month's advance payment (approximately $3,200).

 DSHS argues it is not liable to pay for any ARP, because custody by DSHS is a prerequisite to payment under RCW 74.13.080, and DSHS does not assume custody in an ARP situation. However, RCW 13.32A.175 specifically requires the court to determine the extent of the parents' ability to pay. By implication, DSHS pays if the parents cannot. *See Rosell v. Department of Social & Health Servs.*, 33 Wn. App. 153, 652 P.2d 1360 (1982). Here, the January 29 order stated a financial hearing would be held. RCW 74.08.090 and WAC 388–44 provide the means for DSHS to recover any overpayments, including payments made pending a hearing. Nothing in RCW 13.32A prevents DSHS from assuming custody of a child if that is in fact needed in order to qualify for state aid. In fact, RCW 13.32A.180(1) directs the court to specify in a dispositional order which parental powers will be awarded to the person or agency with whom the child is to be placed.

In summary, the juvenile court did not abuse its discretion to modify the dispositional plan on January 29, 1986, in light of the facts expert testimony supported the placement and Secret Harbor was actually willing to hold a place for Daniel for a limited time. Therefore the court did not abuse its discretion in denying DSHS's motion for relief from the January 29 order.

DSHS next contends the juvenile court abused its discretion in failing to grant DSHS a continuance. This issue is moot and not a matter of substantial public interest. Nevertheless, we note that the grant or denial of a continuance is a matter of trial court discretion. *See Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 617 P.2d 704 (1980) (failure to comply with CR 6 held harmless unless prejudice shown).

Lastly, DSHS contends the court erred in assessing attorney fees against it under RCW 13.32A.250.[7] We agree.

 In general, attorney fees may be awarded in a contempt proceeding under RCW 7.20.100. *State ex rel. Seattle Bottlers Ass'n v. Flora Co.,* 169 Wash. 120, 13 P.2d 467 (1932). However, RCW 13.32A.250 specifically sets out the procedures and punishments for contempt in the ARP context. That statute limits the punishments to a $100 fine and 7 days in jail. It references RCW 7.20.040–.080 for the procedures to be followed. RCW 13.32A.250 does *not* incorporate RCW 7.20.100. Attorney fee awards are not favored in this state, and will not be granted absent contract, statute, or recognized ground in equity. *Mellor v. Chamberlin,* 100 Wn.2d 643, 673 P.2d 610 (1983). The court erred in assessing attorney fees against DSHS as a sanction for contempt.

The order granting Daniel Eaton a specific placement through DSHS is affirmed. The contempt order is reversed insofar as it awards Daniel and his parents attorney fees against DSHS.

DORE and WALTERSKIRCHEN, JJ. Pro Tem., concur.

Review granted by Supreme Court December 2, 1987.

---

[7]RCW 13.32A.250 provides in part:

"(1) Failure by a party to comply with an order entered under this chapter is punishable as contempt.

"(2) Contempt under this section is punishable by a fine of up to one hundred dollars and imprisonment for up to seven days, or both.

". . .

"(4) The procedure in a contempt proceeding held under this section is governed by RCW 7.20.040 through 7.20.080, as now law or hereafter amended."