[No. 54359–3.   En Banc.   July 7, 1988.]

*In the Matter of* DANIEL WILLIAM EATON.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Petitioner,* LARRY EATON, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *Wendy Bohlke, Assistant,* for petitioner.

*Joan H. McPherson,* for respondents.

GOODLOE, J.—Petitioner Department of Social and Health Services (DSHS) seeks review of a Court of Appeals decision affirming an Island County Superior Court order that required (1) DSHS to place respondent Daniel Eaton (Eaton) at a specific group home and (2) DSHS to pay for the placement. We reverse.

I

On October 2, 1985, Barbara Eaton filed a petition for alternative residential placement (ARP) under RCW 13.32A, Procedures for Families in Conflict, in Island County Superior Court. The petition was in regard to her son, Daniel Eaton, then 15 years old. DSHS was not a named party to the action.

On December 11, 1985, the juvenile court entered an order on ARP stating that Eaton be temporarily placed with Olympic Center, an alcohol and drug treatment facility in Bellingham.

On January 29, 1986, at a review hearing of the ARP, the juvenile court ordered that Eaton's placement be changed. The juvenile court made its decision after reviewing Eaton's case file and hearing testimony from John Henderson of DSHS and Barbara Eaton. (The testimony itself was not transcribed.) The order read, in part:

> Child shall be placed at Secret Harbor School by DSHS as soon as Secret Harbor has an available spot. Visitation efforts shall be continued. Interim placement to be with child's relatives, as arranged by parents. If child leaves residence of interim placement without permission, he shall be held in contempt of court and punished accordingly.

Clerk's Papers, at 25.

On February 11, 1986, Eaton's parents moved for contempt against DSHS and several named DSHS employees after it refused to comply with the order that Eaton be placed at Secret Harbor. DSHS responded and claimed that the January 29, 1986 order was void for want of personal jurisdiction since DSHS was not a party to Eaton's ARP action. DSHS also asserted that the juvenile court lacked the statutory authority to make a specific placement.

On February 20, 1986, pursuant to RCW 13.32A.250 and RCW 7.20.040 *et seq.,* the juvenile court found DSHS in contempt for violating the order that it place Eaton at Secret Harbor. The juvenile court imposed a penalty of $100 per day on DSHS until it complied with the order. The juvenile court also ordered DSHS to pay Eaton's parents' costs and disbursements in the amount of $500 as well as Eaton's court appointed attorney costs and disbursements in the amount of $140.

DSHS placed Eaton at Secret Harbor and subsequently appealed. Division One of the Court of Appeals affirmed the juvenile court but reversed the contempt order to the extent of attorney fees. *In re Eaton,* 48 Wn. App. 806, 740 P.2d 907 (1987). DSHS seeks review of that decision. We accepted discretionary review.

## II

Initially, we note that this case is moot. After DSHS was found in contempt it placed Eaton at Secret Harbor. Also, Eaton has reached 18 years of age and is no longer at Secret Harbor, having successfully completed treatment.

Generally, this court will dismiss an appeal if the issues presented are moot. *In re Myers,* 105 Wn.2d 257, 261, 714 P.2d 303 (1986); *Sorenson v. Bellingham,* 80 Wn.2d 547, 558, 496 P.2d 512 (1972). However, the court will make an exception to this rule and address a moot case "when it can be said that matters of continuing and substantial public interest are involved." *Sorenson,* at 558. Three criteria must be considered when

> determining whether the requisite degree of public interest exists: (1) the public or private nature of the question presented, (2) the need for a judicial determination for future guidance of public officers, and (3) the likelihood of future recurrences of the issue.

*Myers,* at 261.

In the present case all three criteria are met. It is a continuing question of public importance whether the juvenile court or DSHS has the right to select the placement of juveniles under RCW 13.32A. This issue has recurred since Eaton's placement, so there is a need for this court to answer the question. Therefore, we hold that the present case is reviewable despite its mootness because it raises an issue of continuing and substantial public interest.

## III

DSHS contends that the juvenile court has no authority to order DSHS to place Eaton at Secret Harbor. DSHS asserts that it should have been allowed to go through its own procedures to determine the proper placement for Eaton.

The conflict arose at the juvenile court hearing to review Eaton's ARP. At that time, Eaton's parents wanted Eaton to be transferred from Olympic Center to Secret Harbor,

and they had arranged with Secret Harbor for such placement. DSHS does not contend that Secret Harbor was an incorrect placement for Eaton. Rather, it objects to being ordered to place Eaton specifically at Secret Harbor. DSHS argues that it should be allowed to follow its procedures in determining the specific placement location. Thus, DSHS can consider all the children that need placement before determining what children have the greatest need of particular services at any given time. If DSHS is ordered to make a specific ARP, then it is prevented from carrying out its duties and responsibilities to all the children in its custody. DSHS asserts that this important step of considering all children is bypassed if the juvenile court makes the placement.

We need look no further than RCW 13.32A to find our answer. The Legislature enacted RCW 13.32A to help families who have conflict in their family relationships. In doing so, the Legislature commented in part:

> The legislature reaffirms its position stated in RCW 13.34.020 that the family unit is the fundamental resource of American life which should be nurtured and that it should remain intact in the absence of compelling evidence to the contrary.

RCW 13.32A.010. With this directive in mind, the Legislature's first priority throughout RCW 13.32A is to try to resolve the conflict so that the family unit can be kept intact.

If every effort at reconciliation has failed, however, then either the parent or child may petition the juvenile court for an ARP. RCW 13.32A.150. The petition asks only that the court approve the placement of the child outside of the parent's home. RCW 13.32A.150. If approved, the ARP is for a limited period of time. RCW 13.32A.180(1). Furthermore, services are made available to the parents and child in an attempt to reunify the family throughout the placement. RCW 13.32A.100.

Once the petition has been filed, DSHS *may* place the

child "in a crisis residential center, foster family home, group home facility licensed under chapter 74.15 RCW, or any other suitable residence to be determined by the department." RCW 13.32A.160(2).

The juvenile court then holds a fact–finding hearing to consider whether the ARP petition should be granted. If the juvenile court approves the petition, the order approving the ARP

shall direct [DSHS] to submit a disposition plan for a three–month placement of the child that is designed to reunite the family and resolve the family conflict. . . . In making the order, the court shall further direct the department to make recommendations, as to which agency or person should have physical custody of the child, as to which parental powers should be awarded to such agency or person, and as to parental visitation rights.

RCW 13.32A.170(2).

Next, the disposition hearing is held and the juvenile court is required to consider DSHS' 3–month disposition plan. RCW 13.32A.180(1).

The court . . . may modify such plan and shall make its dispositional order for a three–month out–of–home placement for the child. *The court dispositional order shall specify the person or agency with whom the child shall be placed,* those parental powers which will be temporarily awarded to such agency or person including but not limited to the right to authorize medical, dental, and optical treatment, and parental visitation rights.

(Italics ours.) RCW 13.32A.180(1).

Finally, the court schedules another hearing to review the ARP within 3 months. RCW 13.32A.190. At that review hearing

the court shall approve or disapprove the continuation of the dispositional plan in accordance with the goal of resolving the conflict and reuniting the family which governed the initial approval. The court shall determine whether reasonable efforts have been made to reunify the family and make it possible for the child to return home. The court is authorized to discontinue the placement and

order that the child return home if the court has reasonable grounds to believe that the parents have displayed concerted efforts to utilize services and resolve the conflict and the court has reason to believe that the child's refusal to return home is capricious. *If out–of–home placement is continued, the court may modify the dispositional plan.*

(Italics ours.) RCW 13.32A.190(2).

■ When construing a statute, the court must ascertain and give effect to the Legislature's intent. *Frank v. Fischer,* 108 Wn.2d 468, 473–74, 739 P.2d 1145 (1987); *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 509, 730 P.2d 1327 (1986). If the statute is unambiguous, the meaning of the statute must be derived solely from the language of the statute. *Everett Concrete Prods., Inc. v. Department of Labor & Indus.,* 109 Wn.2d 819, 822, 748 P.2d 1112 (1988); *Frank,* at 474; *Stewart Carpet Serv. v. Contractors Bonding & Ins. Co.,* 105 Wn.2d 353, 358, 715 P.2d 115 (1986).

■ Furthermore, where a statute designates a list of things whereupon the statute operates, the inference arises that the Legislature intended to omit other things not listed; "specific inclusions exclude implication." *Sulkosky v. Brisebois,* 49 Wn. App. 273, 277, 742 P.2d 193 (1987) (quoting *Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 98, 459 P.2d 633 (1969)); *see Mahoney v. Shinpoch,* 107 Wn.2d 679, 684, 732 P.2d 510 (1987).

■ In the present case, the statute is not ambiguous. It specifically lists those things that the juvenile court can do. The court order can (1) name the agency or person with whom the juvenile should be placed; (2) list the parental powers that the named agency or person shall temporarily assume; and (3) specify parental visitation rights. RCW 13.32A.180(1). The juvenile court here did not name the agency or person with whom Eaton was to be placed; rather, it placed Eaton at a specific location. The Legislature could have granted the juvenile court this authority, but it did not.

We hold that the juvenile court does not have the authority to select the placement facility because this authority has not been enumerated in RCW 13.32A. This holding enables DSHS to fulfill its responsibility to all children in assuring that those most needy receive the limited available openings. DSHS should have been allowed to go through its own procedures to determine if Secret Harbor was the most appropriate location for Eaton.

Our decision is consistent with two similar cases in this area. In *In re Lowe*, 89 Wn.2d 824, 827, 576 P.2d 65 (1978), this court held that the juvenile court may not prescribe specific placement requirements to be followed by DSHS in a juvenile delinquency proceeding. In *In re Gakin*, 22 Wn. App. 822, 824, 592 P.2d 670 (1979), the Court of Appeals reached a similar holding relying on *Lowe* in a juvenile dependency setting. We note that there have been amendments to the juvenile statutes since 1978, but these amendments have not affected the holdings in these cases. We find *Lowe* and *Gakin* persuasive.

The juvenile court improperly exceeded its authority when it ordered DSHS to place Eaton at Secret Harbor.

## IV

DSHS contends that it should not have been required to pay for Eaton's placement at Secret Harbor. DSHS relies on RCW 74.13.080, which states as follows:

> The department shall not make payment for any child in group care placement unless the group home is licensed and the department has the custody of the child and the authority to remove the child in a cooperative manner after at least seventy–two hours notice to the child care provider; such notice may be waived in emergency situations.

DSHS interprets RCW 74.13.080 to mean that it is not required to pay for a child's placement in a group home facility unless DSHS is granted actual physical custody of the child. DSHS asserts that it should not have paid for Eaton's placement since it was not granted physical custody

of Eaton and it had no authority to remove Eaton from Secret Harbor.

Eaton relies on RCW 13.32A.175, which states in part as follows:

> In any proceeding in which the court approves an alternative residential placement, the court shall inquire into the ability of parents to contribute to the child's support. If the court finds that the parents are able to contribute to the support of the child, the court shall order them to make such support payments as the court deems equitable. The court may enforce such an order by execution or in any way in which a court of equity may enforce its orders.

Eaton interprets the statute to mean that DSHS must provide financial assistance to the extent parents cannot pay for their child's placement. In this case, after DSHS' review of Eaton's parents' financial circumstances, it determined that Eaton's parents pay $400 per month (out of a $3,200 per month charge) for their son's placement at Secret Harbor.

The Court of Appeals in *Eaton,* upon consideration of RCW 13.32A.175, held that "[b]y implication, DSHS pays if the parents cannot. *See Rosell v. Department of Social & Health Servs.,* 33 Wn. App. 153, 652 P.2d 1360 (1982)." *In re Eaton,* 48 Wn. App. 806, 813, 740 P.2d 907 (1987). The Court of Appeals concluded that

> [n]othing in RCW 13.32A prevents DSHS from assuming custody of a child if that is in fact needed in order to qualify for state aid. In fact, RCW 13.32A.180(1) directs the court to specify in a dispositional order which parental powers will be awarded to the person or agency with whom the child is to be placed.

*Eaton,* at 813.

While DSHS' and Eaton's arguments alone appear persuasive, neither party nor the Court of Appeals addressed the relationship between RCW 13.32A.175 and RCW 74.13-.080. At first glance, the two statutes appear to conflict. RCW 13.32A.175 clearly states that parents do not have to pay for their child's ARP if they are unable to afford such

payments. However, RCW 74.13.080 precludes DSHS from making such payments unless the child is in its custody.

■■ "[I]t is the duty of the court to reconcile apparently conflicting statutes and to give effect to each of them, if this can be achieved without distortion of the language used." *Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 391–92, 645 P.2d 697 (1982); *see Reese v. Sears, Roebuck & Co.,* 107 Wn.2d 563, 572, 731 P.2d 497 (1987); *State v. Fagalde,* 85 Wn.2d 730, 736–37, 539 P.2d 86 (1975). We find that RCW 13.32A.175 and 74.13.080 can be reconciled without distorting either statute. DSHS was granted custody of Eaton, although it may not have been sole custody. The January 29, 1986 order that DSHS place Eaton at Secret Harbor provided that

> [t]he agency and Secret Harbor School shall have the power to authorize and provide routine medical and dental examination and care and all necessary emergency care for the child.

Clerk's Papers, at 25. DSHS is the "agency" referred to regarding medical care, and the authority to authorize and provide routine medical, dental, and emergency care denotes that DSHS had partial custody of Eaton. Furthermore, nothing in the January 29, 1986 order precluded DSHS from removing Eaton from Secret Harbor if necessary.

Moreover, statutes should be construed to give meaning to each statute and to avoid absurd or strained consequences. *See Pasco v. Napier,* 109 Wn.2d 769, 773–74, 748 P.2d 1108 (1988); *State v. Stannard,* 109 Wn.2d 29, 36, 742 P.2d 1244 (1987). If DSHS did not pay for the placement and Eaton or his parents were unable to do so, then DSHS' construction of the statutes would result in the juvenile court paying for placement outside of DSHS' physical custody. The Legislature clearly could not have intended such a result.

We hold that DSHS was required to pay for the placement of Eaton at Secret Harbor.

## V

We conclude that the juvenile court had no authority to place Eaton at Secret Harbor. Therefore, we reverse.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.