# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52603-4-II |
| Respondent, | |
| v. | |
| ERIC JACOB NEWMAN, | Consolidated With |
| Appellant. | |
| In the Matter of the Personal Restraint Petition of | No.  53963-2-II |
| ERIC JACOB NEWMAN, | UNPUBLISHED OPINION |
| Petitioner. | |

WORSWICK, J. — In this consolidated appeal and personal restraint petition (PRP), Eric

Newman contests his convictions for unlawful possession of a controlled substance with intent to

deliver—methamphetamine, unlawful possession of a controlled substance—heroin, unlawful

possession of a firearm, and unlawful possession of a stolen firearm.  He also claims the trial

court failed to follow CrR 3.2 and violated constitutional guarantees by requiring him to post bail

in the amount at $35,000.  In his direct appeal, Newman challenges only his conviction for

unlawful possession of a stolen firearm, arguing (1) the prosecutor committed misconduct during

closing argument by asking the jury to presume an essential element, (2) his attorney provided

ineffective assistance, and (3) the trial court violated Newman's constitutional rights when it

failed to follow CrR 3.2 in setting his bail at $35,000.  Newman also filed a Statement of

Additional Grounds (SAG) for Review. Additionally, the trial court transferred Newman's CrR 7.8 motion to us as a PRP. Finally, Newman filed a supplemental brief arguing that his conviction for unlawful possession of heroin must be dismissed because the statute has been struck down as unconstitutional. We reverse Newman's conviction for unlawful possession of a controlled substance—heroin, and remand to the trial court for resentencing. We affirm his convictions for unlawful possession of a controlled substance with intent to deliver— methamphetamine and unlawful possession of a stolen firearm. We further hold that his pretrial release arguments are moot. Finally, we deny Newman's PRP.

## FACTS

### I. UNDERLYING FACTS

In February 2018, the Longview Police Department served a search warrant at an apartment in Longview. Newman was observed in the apartment, standing in the space between the living room and the kitchen. Newman and other people present were detained. Police searched a room they believed was Newman's because it contained medical supplies and medical paperwork belonging to him. On the side of the bed, police found a small safe, but could not locate a key. Police forced the safe open. Inside the safe, police found a customized Ruger 1911 .45 caliber semiautomatic pistol without a magazine, a scale with drug residue, various pills, drugs, and drug paraphernalia. A key was later found inside the apartment, near where Newman had been standing. Police also found a glass pipe containing methamphetamine in the room believed to be Newman's. Newman was arrested and transported to the Cowlitz County jail.

Because Newman was recovering from a preexisting gunshot wound to his leg, Newman had to be transported to the King County jail system.

A check of Newman's criminal history showed that he had multiple prior felony convictions, which precluded him from lawfully possessing a firearm. The pistol located in the safe found in the apartment had been reported stolen the month before in the neighboring town of Kelso. The lawful owner of that firearm was a veteran of the armed forces and had custom-engraved the pistol as a platoon memorial piece. There were only 36 of their kind produced. In March, Newman was taken back into Cowlitz County. The State charged Newman with unlawful possession of a controlled substance with intent to deliver—methamphetamine[1] with a firearm enhancement, unlawful possession of a controlled substance—heroin,[2] first degree unlawful possession of a firearm,[3] and possession of a stolen firearm.[4]

## II. PRETRIAL

Newman attended a preliminary hearing on March 9. At the hearing, Newman was still recovering from the gunshot wound to his leg that required medical attention. The State sought bail in the amount of $50,000 based on Newman's extensive criminal history, including 6 prior warrants, 7 prior misdemeanor convictions, and 14 prior felony convictions. Defense counsel asked the court to release Newman on his personal recognizance, arguing that Newman had a

---

[1] RCW 69.50.401(1), .401(2)(b).

[2] RCW 69.50.4013(1).

[3] RCW 9.41.040(1)(a).

[4] RCW 9A.56.310(1), .140(1).

medical appointment to meet with a surgeon regarding his leg wound.  The court set bail at $35,000.

At an April 17 omnibus hearing, Newman again asked the court to consider release on personal recognizance or to reduce his bail due to his ongoing medical complications and doctor appointments related to his gunshot wounds.  The State argued that Newman should not be released because his prior criminal history and pending firearm charges made him a danger to the community if released.  The court agreed with the State and denied Newman's request. Nonetheless, the record suggests, and the State's brief says, that Newman was released from custody at some point between April 17 and August 20.[5]

### III.  The Trial

Newman's trial commenced on August 29.  The State called the lawful owner of the firearm found in the safe, who testified that his pistol was stolen in January and that Newman did not have permission to possess the pistol.  The State called the investigating officers from the February arrest, who each testified about the arrest, and the circumstances surrounding finding the safe and gun in what was believed to be Newman's room of the apartment.  Detective Benjamin Mortensen testified that when he entered the apartment to conduct the search, Newman was standing "in the living room/kitchen or the space between the two."  Report of Proceedings (RP) at 200.  Mortensen testified that he believed the bedroom that contained the safe was Newman's room because of the presence of medical supplies and medical discharge paperwork

---

[5] The State's brief says Newman posted bail.

4

bearing Newman's name. Mortensen testified that the key to the safe was eventually found "right where the defendant was standing when the door initially opened." RP at 270.

Detective Jordan Sanders testified that the key to the safe was eventually located inside the apartment in the middle of the living room between the living room and the kitchen floor. The Court read a factual stipulation to the jury, that Newman was a convicted felon and was on notice on the date of his arrest that he could not lawfully possess or control a firearm due to his conviction.

Newman called Kristen Celeski, who testified that the safe in question was hers, and that she put the safe in that apartment because she was in a "domestic violence situation at [her] house." RP at 344. In her testimony, Celeski accurately described the contents of the safe. She testified that she had left the key on top of the refrigerator at the apartment. Newman did not testify, and there was no direct evidence that Newman knew the firearm in the safe was stolen.

The trial court's instructions to the jury included an instruction that "the lawyers' statements are not evidence," and that the jury must "disregard any remark, statement, or argument that is not supported by the evidence or law in [the court's] instructions." RP at 289. The instructions described the equal value of direct and circumstantial evidence in a criminal trial, defining circumstantial evidence as "evidence from which, based on your common sense and experience, you may reasonably infer something that is at issue in this case." RP at 293. The instructions included a definition of "knowledge," explaining that "[i]f a person has information that would lead a reasonable person in the same situation to believe that a fact exists,

5

the jury is permitted but not required to find that he acted with knowledge of that fact." RP at

296-97.

During closing arguments, the prosecutor argued that the jury should find that Newman

had knowledge that the firearm was stolen based on the evidence:

> The second element is that the defendant acted with knowledge that the firearm had been stolen. So how do we know that he knew that the gun was stolen? First of all, he's a convicted felon who's not allowed to possess firearms, so he can't go into a gun shop and buy a gun.
>
> So if he is obtaining a gun, he has to go through back channels. Back channels frequently include stolen firearms. We also know that this particular gun is fairly unique. I believe Mr. Lorenzo testified that there are only 35 or 36 of this particular firearm with these particular engravings. His platoon essentially ordered them up with the custom engravings and got them when he came back to the States from their tour.
>
> So when you go back into the jury room, this will be with you for your deliberations. Look at these distinctive markings. Look at the engravings. It says Operation Enduring Freedom 13. So this is a very specific firearm that a typical person would wonder about these custom engravings and think this gun belongs to somebody.
>
> So we know that the defendant can't obtain a firearm in the usual way. We know that this is a very distinctive firearm and a reasonable person would conclude under those circumstances that this firearm is stolen, and the jury can infer that if a reasonable person would know something the defendant also can [UNINTELLIGIBLE] to know that.

RP at 365-66 (alteration in original).

Newman did not object to the State's closing arguments at trial. Newman was found

guilty of all charged offenses, but the jury did not find evidence to support the firearm

enhancement.

No. 52603-4-II;
Cons. No. 53963-2-II

Newman appeals his convictions. Newman also filed a motion for relief from judgment under CrR 7.8, which was transferred and accepted by this court as a PRP and consolidated with this case.

ANALYSIS

I. DIRECT APPEAL

A. *Prosecutorial Misconduct*

Newman argues that the prosecutor committed misconduct during her closing arguments at trial when she urged jurors to draw an impermissible inference, thereby relieving the State of its burden of proof beyond a reasonable doubt for all the elements of the crime of unlawful possession of a stolen firearm. Newman argues that the prosecutor committed misconduct by arguing to the jury that they could assume Newman knew the firearm was stolen because he was a felon who could not lawfully obtain a firearm, and because the firearm was uniquely customized. The State argues that this argument was merely a permissible, reasonable inference drawn from the evidence. We hold that Newman's argument was waived under *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

1. *Legal Principles and Standards of Review*

When claiming prosecutorial misconduct, a defendant must demonstrate that the prosecutor's conduct was both improper and prejudicial. *State v. Sakellis*, 164 Wn. App. 170, 183, 269 P.3d 1029 (2011). When reviewing an allegation of an improper prosecutorial argument, we review the contested statements "in the context of the entire argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." *Sakellis*, 164 Wn.

7

App. at 185. When a defendant fails to object to prosecutorial misconduct at trial, we consider

the claim waived unless the misconduct is so flagrant and ill-intentioned that any resulting

prejudice could not have been neutralized by a curative instruction. *Matter of Phelps*, 190

Wn.2d 155, 165-66, 410 P.3d 1142, 1147 (2018). Such a defendant must show that "(1) 'no

curative instruction would have obviated any prejudicial effect on the jury' and (2) the

misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'"

*Emery*, 174 Wn.2d 761 (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

    2. *Discussion*

    a. Inviting an Inference Not Premised by Evidence and Fact is Improper

    In her closing argument, the prosecutor stated:

> First of all, he's a convicted felon who's not allowed to possess firearms, so he can't go into a gunshop [sic] and buy a gun.
>     So if he is obtaining a gun, he has to go through back channels. Back channels frequently include stolen firearms.

RP at 365.

    Newman must first show that these statements were improper. *Sakellis*, 164 Wn. App. at

183. Newman argues that these statements were improper because the State asked the jury to

make an impermissible inference. Specifically, Newman argues that the State cannot ask the

jury to infer Newman had knowledge the firearm was stolen based on Newman's status as a

felon because "the [S]tate presented no evidence that felons can only get guns which are stolen,

or that the majority of guns on the secondary markets are stolen, or anything similar." Br. of

Appellant at 10. We agree that the statement "[b]ack channels frequently include stolen

firearms" was improper.

8

The State has wide latitude during closing arguments to argue reasonable inferences from the evidence. *Thorgerson*, 172 Wn.2d at 448. "Prosecutors are free to argue their characterization of the facts presented at trial and what inferences these facts suggest in closing argument." *Matter of Phelps*, 190 Wn.2d 155, 166-67, 410 P.3d 1142, 1147-48 (2018). But a "[p]resumption may not be pyramided upon presumption, nor inference upon inference." *State v. Willis*, 40 Wn.2d 909, 914, 246 P.2d 827 (1952). In *Willis*, our Supreme Court held that an inference of one fact may be raised from *proof* of another, but that an inference of guilt could not be based on the inference of an *inference*. 40 Wn.2d at 914 (emphasis added).

The State points to *State v. Rockett*, 6 Wn. App. 399, 402, 493 P.2d 321 (1972), and *State v. Ehrhard*, 167 Wn. App. 934, 943, 276 P.3d 332 (2012) to support their argument that the State can argue a valid inference from recent possession of stolen goods as evidence of guilt. But these cases involved only one inference the State asked the jury to make and so these cases offer little support to the State. The State also cites *State v. Ford*, 33 Wn. App. 788, 790, 658 P.2d 36 (1983) for the proposition that slight corroboration or inculpatory circumstances can support a conviction by establishing knowledge in possession of stolen goods. But in that case, the inference Ford knew the car was stolen was supported by evidence in the trial, not an inference the prosecutor invited the jury to draw from another substantiated inference. 33 Wn. App. at 790.

Here, there was no evidence at trial regarding methods used by convicted felons to obtain firearms. The State argued that because Newman is a felon, he could not obtain a firearm lawfully. This fact was stipulated to by the parties. The State then argued that based on his

9

ineligibility to possess a firearm, the jury could infer that Newman obtained the firearm

unlawfully through the black market. This is an appropriate inference based on the evidence

presented at trial. However, the State then went on to engage in inappropriate "pyramiding" of

inferences to argue that the jury should infer that the firearm was stolen because "[b]ack

channels frequently include stolen firearms." RP at 365. Because the State invited the jury to

make an inference upon an inference, this comment amounts to misconduct.

The prosecutor's statement that "[b]ack channels frequently include stolen firearms" goes

beyond the evidence and common sense, and assumes a fact that is unsupported by evidence in

the trial. RP at 365. Because the State invited the jury to draw an impermissible inference, we

hold that this amounted to improper conduct.

b. Prosecutor's Conduct Was Not Flagrant and Ill-Intentioned

Newman failed to object to the prosecutor's argument in the trial court. Thus, his claim

is waived unless he can show that the conduct was flagrant and ill-intentioned. To do this, he is

required to show that "(1) 'no curative instruction would have obviated any prejudicial effect on

the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of

affecting the jury verdict.'" *Emery*, 174 Wn.2d 741 (quoting *Thorgerson*, 172 Wn.2d at 455).

He fails to meet this burden. A prosecutor's statement is incurable if it engenders "such a feeling

of prejudice" in the minds of the jury "as to prevent a defendant from having a fair trial." *Emery*,

174 Wn.2d at 762 (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932)).

"[R]emarks are not per se incurable simply because they touch upon a defendant's constitutional

rights." *Emery*, Wn.2d at 763.  To "rise to such level," the prosecutor's comments must be more than confusing; they must be inflammatory.  *Emery*, 174 Wn.2d at 763.

Newman offers no argument for why the misconduct could not have been cured by a jury instruction.  He makes no effort to explain how the improper inference was flagrant and ill-intentioned.  We hold that the argument here does not rise to the level of being incurable.  The State's pyramided inference may have been confusing to the jury in light of the court's other instructions regarding what evidence and inferences they could consider, but the comments were not inflammatory comments that caused an incurable prejudice in the minds of the jury.  We hold that a curative instruction would have obviated any prejudicial effect on the jury and, thus, Newman's argument is waived.

B.      *Ineffective Assistance of Counsel*

Newman alternatively argues that his counsel was ineffective in failing to object to the prosecutor's argument and seek a curative instruction.  We disagree.

1. *Legal Principles*

To establish a claim of ineffective assistance of counsel, a defendant is required to show both deficient performance and that the deficient performance prejudiced him.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984); *State v. Thomas*, 109 Wn.2d 222, 225, 743 P.2d 816 (1987).  A defendant's failure to establish either element of the test defeats his ineffective assistance of counsel claim.  *State v. Rafay*, 168 Wn. App. 734, 775, 285 P.3d 83 (2012).

11

There is a strong presumption that counsel's representation was competent. *State v. Hassan*, 151 Wn. App. 209, 217, 211 P.3d 441 (2009). Legitimate trial strategy or tactics cannot be the basis for an ineffective assistance of counsel claim. *Rafay*, 168 Wn. App. at 840. We do not consider matters outside of the trial record when considering a claim of ineffective assistance of counsel on direct appeal. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018). A defendant alleging ineffective assistance of counsel must show deficient representation based on the record before us. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

A defendant must affirmatively prove prejudice by showing that there is a reasonable probability that the proceedings would have been different but for counsel's deficient performance. *State v. Crawford*, 159 Wn.2d 86, 100, 147 P.3d 1288 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694.

2. *Discussion*

Defense counsel's failure to object during a prosecutor's closing argument will generally not constitute deficient performance because lawyers do not commonly object during closing argument absent egregious misstatements. *State v. Blockman*, 198 Wn. App. 34, 42, 392 P.3d 1094 (2017), *aff'd* 190 Wn.2d 651 (2018). "Counsel's decisions regarding whether and when to object fall firmly within the category of strategic or tactical decisions." *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007).

The prosecutor's statement was not so egregious to rule out that counsel made the tactical decision not to object. Counsel's closing argument focused on dominion and control of the safe in the bedroom. Counsel had a strong argument that Newman did not have dominion and control over the safe because he was not in the room where it was found, the safe was locked, Newman was not in possession of the key, and Celeski testified that the safe in question was hers. Moreover, the jury was instructed that argument of the attorneys was not evidence. Newman has not shown on this record that counsel's strategy to not call attention to the prosecutor's brief statement and instead focus on dominion and control, was not tactical. Thus, Newman has not overcome the strong presumption of competency.

Newman has not shown on this record that his counsel's performance was deficient. We hold that Newman has not shown that his counsel performed deficiently when he failed to object during closing argument

C.      *Pretrial Release Issue Moot*

Newman argues, for the first time on appeal, that the trial court failed to follow CRr 3.2, and violated his due process rights and the equal protection clause when setting the terms of his pretrial release. The State argues that this was not preserved, is not a manifest error affecting a constitutional right, and is moot. We hold that the issue is moot.

Newman concedes that his pretrial release issue is moot. However, he invites us to decide the issue as a matter of "continuing and substantial public interest." Br. of App. at 27. We decline to decide this issue.

No. 52603-4-II;
Cons. No. 53963-2-II

An issue that is moot will not be considered unless it involves "matters of continuing and substantial public interest." *In re Eaton*, 110 Wn.2d 892, 895, 757 P.3d 961 (1988). We consider three factors in determining whether a case satisfies this exception: first, we examine whether the nature of the question is public or private; second, we determine whether there is a need for an authoritative determination of the question for the future guidance of public officers; and third, we consider the likelihood of future recurrence of the question. *State v.* Cruz, 189 Wn.2d 588, 598, 404 P.3d 70 (2017).

Taking these considerations into account, first, the parties do not dispute that the matter involves a public question. Second, recent cases on this issue obviate the need for additional determination for future guidance. *See State v. Huckins*, 5 Wn. App. 2d 457, 468, 426 P.3d 797 (2018) (holding that the trial court erred when it failed to make a required finding that less restrictive conditions would assure safety of community). Third, there is no evidence before us concerning the likelihood of future recurrence of this issue. Thus, this issue does not present a continuing and substantial public interest. Thus, this issue is moot. We decline to engage in review of Newman's moot claims because they do not present issues of continuing and substantial public interest.

## II. SUPPLEMENTAL BRIEF

Newman also filed a supplemental brief, arguing that in light of our Supreme Court's holding in *State v. Blake*,[6] we should vacate his conviction for unlawful possession of a

---

[6] 197 Wn.2d 170, 174, 481 P.3d 521 (2021). There, our Supreme Court held that RCW 69.50.4013(1)—the simple drug possession statute—violates due process.

14

controlled substance—heroin, and remand for resentencing. The State concedes that Newman's

drug possession conviction must be vacated. We accept the State's concession. Accordingly, we

reverse Newman's conviction for unlawful possession of a controlled substance—heroin.

## III. SAG

Newman filed a SAG which raises several points challenging his conviction. RAP 10.10

does not require an appellant to refer to the record or authority in his SAG. RAP 10.10(c).

However, we limit our review of issues raised in a SAG to those statements that inform us of the

nature and occurrence of the alleged errors. *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496

(2013). We do not address issues involving facts or evidence not in the record, as those are

properly brought in a personal restraint petition and not in a statement of additional grounds.

*Calvin*, 176 Wn. App. at 26.

A.      *Arguments Based on Evidence Not in the Record on Appeal*

Newman makes several arguments involving facts and evidence not in our record on

appeal. He argues (1) that a key, a safe, and discharge paperwork were never "logged as

evidence," and that the bedroom was not listed on the search warrant; (2) the police failed to

make a full investigation, including interviewing potential witnesses and collecting DNA

(deoxyribonucleic acid) evidence or fingerprint evidence in violation of his "[p]resumption of

guilt"; (3) the State misled the jury about the safe and his medical paperwork; (4) the trial court

erred by allowing him to be arrest[ed] "in view of jury," and that uniform police stood by him

during the trial; and (5) his attorney was ineffective for failing to meet deadlines, consult with

Newman, and pursue other legal theories and arguments. SAG at 1, 2, 3. These claims all

involve facts and evidence not in our record, and we do not review them. *Calvin*, 176 Wn. App. at 26.

B.      *Statements Too Vague To Merit Consideration*

Newman makes two claims that do not inform us of the nature and occurrence of the alleged errors. He argues that the State asked leading questions, citing three examples where the State conducted direct and redirect examination of a witness during the trial. Newman also states that his "[p]roof of residency [was] not established." SAG at 2. These statements are too vague to properly inform us of the errors, and we are unable to consider them.

C.      *Abuse of Discretion*

Newman appears to argue that the trial court abused its discretion by permitting the State to recall a witness, and allowing repeated questions for cumulative testimony. This argument fails.

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." ER 611(a). Our review of the record shows the trial court did not abuse its discretion by either allowing the State to recall a witness or by allowing attorney questions. Thus, this argument fails.

16

IV. PERSONAL RESTRAINT PETITION

Newman also filed a motion to modify or relief of sentence and judgment and arrest of judgment and new trial, which the trial court transferred to us as a PRP under CrR 7.8.[7] Newman offers numerous claims of error in his petition with little or no reference to facts or evidence, supporting authorities or analysis. He did not file any declaration or additional evidence in support of his PRP. The State argues that we should decline to review Newman's arguments because they fail to meet the bare minimum standards. Although many claims in the petition are conclusory allegations and unsupported assertions, or are based on facts not included in the record, we are able to review some of his arguments. Those arguments with sufficient form are "insufficiency of proof of a material element of the crime," "presumption of guilt," and "ineffective assistance of counsel." Although these arguments are reviewable, Newman fails to meet his burden to prevail on these arguments. We therefore deny Newman's PRP.

A. *Legal Principles*

A petitioner who believes he is under unlawful restraint may seek relief through a PRP. RAP 16.4. The petitioner must demonstrate both error and prejudice. *In re Pers. Restraint of Sandoval*, 189 Wn.2d. 811, 821, 408 P.3d 675 (2018). Errors that are constitutional must be accompanied by actual and substantial prejudice. 189 Wn.2d. at 821. Errors not of constitutional magnitude must represent a "'fundamental defect . . . that inherently resulted in a complete miscarriage of justice.'" 189 Wn.2d. at 821 (quoting *In re Pers. Restraint of Finstad*, 177 Wn.2d 501, 506, 301 P.3d 450 (2013)).

---

[7] Because Newman's motion was referred to us as a petition, we refer to this motion as a PRP.

A petitioner must establish error and prejudice by a preponderance of evidence. *In re Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004); *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). A petitioner may not rely on "[bald] assertions and conclusory allegations." *In re Lord*, 152 Wn.2d at 188 (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

A PRP must include, at a bare minimum, "[a] statement of (i) the facts upon which the claim of unlawful restraint of petitioner is based and the evidence available to support the factual allegations, (ii) why other remedies are inadequate, and (iii) why the petitioner's restraint is unlawful." *In re Griffin*, 181 Wn. App. 99, 104, 325 P.3d 322 (2014), *remanded*, 182 Wn.2d 1022, 349 P.3d 819 (2015); RAP 16.7(a)(2). A PRP that does not meet the bare minimum must be denied. *See Id.*

B. *Discussion*

1. *Conclusory Allegations and Unsupported Assertions Not Considered*

In his PRP, Newman makes the following conclusory allegations and unsupported assertions without the proper form that merit denial of review under *In re Griffin*, 181 Wn. App. 99. Newman's petition states:

1. Insufficiency of proof of a material element of the crime.
   Search warrant did not include safe.
   No key as evidence yet stated as evidence.
   No possession/control of safe established.
2. Inadequate law library access.
3. New evidence.
4. New supporting case law.
5. Irregularities in the proceeding.
   Restraint without a restraint order.
   Two officers within 5 feet on 3rd day of trial.

18

          Prosecutor rested then recalled witness for jury question without any jury question.

          DOC arrested him in front of jury without a warrant.

6. Error of law.

          Testimony of recalled witness stating a "key" yet no key presented as evidence.

7. Decision and verdict contrary to evidence.

          Witness stated on stand it was her safe not the defendants.

8. Ineffective counsel.

          Not prepared for trial.

          No evidentiary hearing.

          No *Franks v. Delaware* hearing. 438 U.S. 154, 98 S. Ct. 57 L. Ed. 2d 667 (1978).

          No cross-examination of any witnesses prior to trial.

          No argument for same criminal conduct or concurrent sentence.

          No *State v. Knapstad* hearing. 107 Wn.2d 346, 729 P2d (1986).

9. Due to no jury instruction for exceptional sentence, an exceptional sentence is barred by RCW 9.94A.535(3) considered by jury.

Petition, No. 53963-2, at 3-5 (Wash. Ct. App. Oct. 23, 2019) (Mot. to Modify or Relief of Sentence and Judgment 7.8 and Arrest of Judgment 7.4 and New Trial 7.5).

This list of complaints is inadequate to meet Newman's burden to state with particularity the facts that entitle him to relief, thus we do not consider them.

2. *Allegations Failing To Meet Burden for Relief*

a. Insufficiency of Proof of a Material Element of the Crime

Newman argues that there is insufficient evidence to support a conviction. Specifically, Newman appears to argue that because the key and the safe were not entered as evidence at trial, that the testimony of the arresting officers about the key and the safe alone do not support a charge. Newman appears to argue that the State did not carry its burden of proof with respect to the element of possession. Newman offers no authority to support his argument. Newman does not challenge the jury instructions on the law of possession. This argument fails.

In reviewing the sufficiency of the evidence, we determine whether, in a light most favorable to the prosecution, the evidence could lead a fact finder to find beyond a reasonable doubt that Newman was guilty. *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 368, 256 P.3d 277 (2011).

Newman was convicted on charges stemming from his possession of the safe and its contents: drugs and a firearm. The jury was instructed on possession, including constructive possession. The jury was instructed that they could find Newman was in constructive possession if Newman had dominion and control over the items. The jury was instructed that they could consider as factors that Newman had dominion and control if he had the "immediate ability to take actual possession" and "the capacity to exclude others from possession." CP at 45

At trial, witnesses testified that they found a safe containing drugs and a stolen firearm in a bedroom where Newman's possessions were found. Witnesses also testified that they found a key to the safe "right where [Newman] was standing when the door initially opened." RP at 270. This evidence could lead a fact finder to conclude that Newman had dominion and control over the safe because the safe was in Newman's room that he could control access to. Moreover, the evidence could lead a fact finder to conclude that Newman had actual possession of the key to the safe because of his proximity to where the key was discovered by law enforcement. We hold that, viewed in a light most favorable to the State, the evidence could lead a fact finder to find beyond a reasonable doubt that Newman had possession over the safe and its contents.

Newman has failed to carry his burden of proof. Consequently, this argument fails.

b. Presumption of Guilt

20

Newman claims that because law enforcement did not conduct what he argues was an adequate investigation, his constitutional right to a presumption of innocence was violated. Specifically, Newman argues that the police did not perform a DNA test, collect fingerprints, or interview other witnesses at the scene of the crime. Newman's argument appears to challenge the sufficiency of the evidence to prove his identity. This argument fails.

An eye witness at trial identified Newman as the suspect of the investigation. That witness testified that it was Newman's room where the safe was located. We hold that, in a light most favorable to the prosecution, the evidence could lead a fact finder to find beyond a reasonable doubt that State proved that Newman had committed the crimes. Thus, this argument fails.

c. Ineffective Assistance of Counsel

Newman argues that he received ineffective assistance of counsel. Newman makes numerous summary allegations: his lawyer failed to interview witnesses prior to trial, his lawyer failed to meet court deadlines, his lawyer made ineffectual arguments, his lawyer asked for continuances, his lawyer was not prepared for trial, his lawyer failed to prepare a defense, his lawyer failed to conduct a thorough investigation, his lawyer failed to object to improper forms of the question, his lawyer failed to object to leading questions, his lawyer failed to conduct adequate cross examination, his lawyer failed to move to suppress purportedly inadmissible evidence, and that his lawyer failed to challenge a purportedly faulty search warrant, among other arguments. Newman seems to argue that these allegations amount to cumulative error that denied him a fair trial. This argument fails.

21

The cumulative error doctrine applies only when several errors not justifying reversal on their own, when combined, may deny a defendant a fair trial. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). For the doctrine to apply, a defendant must still identify the errors it relies on. *State v. Hodges*, 118 Wn. App. 668, 673, 77 P.3d 375 (2003).

We do not consider conclusory arguments unsupported by citation to authority. *In re Matter of D.J.S.*, 12 Wn. App. 2d 1, 42, 465 P.3d 820 (2020).

Here, Newman has cited no authority for any of his allegations. Additionally, many of his allegations refer to evidence and facts that are not available for review because they are outside of the trial record, and not contained in a declaration or other competent form. Because Newman has not carried his burden to establish that his lawyer erred, the doctrine of cumulative error cannot apply. We hold that this argument is without merit.

## CONCLUSION

We hold that although the prosecutor engaged in misconduct at closing argument, Newman waved his right to object for the first time on appeal because the misconduct was curable. We hold that Newman has failed to show that he was provided ineffective assistance of counsel. We hold that Newman's claims regarding the conditions of his pretrial release are moot and we decline to review them because they do not present issues of continuing and substantial public interest. We hold that Newman's SAG fails. We deny Newman's PRP. We affirm his convictions for unlawful possession of a controlled substance with intent to deliver—methamphetamine and unlawful possession of a stolen firearm. We reverse and remand to the

No. 52603-4-II;
Cons. No. 53963-2-II

trial court to vacate Newman's conviction of unlawful possession of a controlled substance—heroin, and for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, J.

_____
Glasgow, A.C.J.